No. 11-55016

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

TARLA MAKAEFF, Individually and on Behalf of All Others Similarly Situated,

Plaintiff-Counter-Defendant-Appellant,

vs.

TRUMP UNIVERSITY, LLC,

Defendant-Counter-Claimant-Appellee.

Appeal from the United States District Court
for the Southern District of California
No. 3:10-cv-00940-IEG(WVG)
The Honorable Irma E. Gonzalez

MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF IN SUPPORT OF
PLAINTIFF-COUNTER-DEFENDANT-APPELLANT
AND *AMICUS CURIAE* BRIEF

SCOTT+SCOTT LLP
CHRISTOPHER M. BURKE (214799)
707 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  619/233-4565
619/233-0508 (fax)

Attorneys for *Amicus Curiae* Consumer Attorneys of California

*Makaeff v.Trump University, LLC*
Ninth Circuit Case No. 11-55016

## CORPORATE DISCLOSURE STATEMENT

Consumer Attorneys of California has no parent company, subsidiary, or affiliate that has issued shares to the public.

# TABLE OF CONTENTS

Page

MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF .................................. 1

*AMICUS CURIAE* BRIEF .................................................................................. 2

I. STATEMENT OF INTEREST .................................................................. 2

II. ARGUMENT ............................................................................................. 3

    A. The District Court's Order Erodes the High Standards Set by the California Legislature for SLAPP Actions ...................................... 3

    B. Dismissing the Counterclaim Would Promote a Strong Anti-SLAPP Law as Well as a Wide Range of Other Consumer Interests ..................................................................................... 5

III. CONCLUSION .......................................................................................... 8

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Californians for Disability Rights v. Mervyn's, LLC,*
   39 Cal. 4th 223 (2006) ...................................................................................2

*Church of Scientology v. Wollersheim,*
   42 Cal. App. 4th 628 (1996) ..........................................................................4

*Clayworth v. Pfizer, Inc.,*
   49 Cal. 4th 758 (2010) ...................................................................................2

*Equilon Ent. v. Consumer Cause, Inc.,*
   29 Cal. 4th 53 (2002) .....................................................................................4

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009) ...................................................................................2

*Kwikset Corp. v. Superior Court,*
   51 Cal. 4th 310 (2011) ...................................................................................2

*Ludwig v. Superior Court.*
   37 Cal. App. 4th 8 (1995) ..............................................................................7

*Navellier v. Sletten,*
   29 Cal. 4th 82 (2002) .....................................................................................4

*Padres L.P. v. Henderson,*
   114 Cal. App. 4th 495 (4th Dist. 2003) .........................................................3

*Simpson Strong-Tie Co., Inc. v. Gore,*
   49 Cal. 4th 12 (2010) .....................................................................................2

*Thomas v. Collins,*
   323 U.S. 516 (1946) .......................................................................................7

*Tichinin v. City of Morgan Hill,*
   177 Cal. App. 4th 1049 (2009) ......................................................................7

**STATUTES, RULES AND REGULATIONS**

Cal. Code Civ. Proc.
   § 425.16 ...........................................................................................................6
   § 425.16(a) (1997 Amendments) ...................................................................4
   § 425.16(b)(1) ................................................................................................4

**Page**

Federal Rules of Appellate Procedure
    Rule 29(b) ................................................................................................1
    Rule 29(c)(5) ...........................................................................................2

## MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF

Consumer Attorneys of California ("CAOC") moves the court, pursuant to Rule 29(b) of the Federal Rules of Appellate Procedure, for an order granting CAOC leave to file a brief as *amicus curiae* in support of plaintiff-counter-defendant-appellant Tarla Makaeff. Appellant Makaeff consents to CAOC filing a brief as *amicus curiae*. Appellee Trump University, LLC opposes CAOC's motion.

CAOC, founded in 1962, is a voluntary non-profit membership organization of approximately 3,000 consumer attorneys practicing in California. Its members predominantly represent individuals subjected to a variety of unlawful and harmful business practices, including consumer fraud, personal injuries, wage and hour violations, and insurance bad faith. CAOC has taken a leading role in advancing and protecting the rights of consumers in both the courts and the legislature.

As set forth in the attached brief, CAOC contends the district court erred in holding that Trump University's defamation counterclaim cannot be dismissed. CAOC is familiar with the questions presented in this appeal and believes that the analysis and policy considerations in the accompanying brief will be of assistance to the Court. Accordingly, CAOC respectfully requests permission to file the attached *amicus curiae* brief.

## *AMICUS CURIAE* BRIEF

**I.      STATEMENT OF INTEREST[1]**

CAOC, founded in 1962, is a voluntary non-profit membership organization of approximately 3,000 consumer attorneys practicing in California. Its members predominantly represent individuals subjected to a variety of unlawful and harmful business practices, including consumer fraud, personal injuries, wage and hour violations, and insurance bad faith. CAOC has taken a leading role in advancing and protecting the rights of consumers in both the courts and the legislature.

CAOC has participated as an *amicus curiae* in cases interpreting California's anti-SLAPP law (strategic lawsuits against public participation), *see, e.g.*, *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal. 4th 12 (2010), as well as a number of leading cases interpreting other California consumer protection statutes, including *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758 (2010)*; In re Tobacco II Cases*, 46 Cal. 4th 298 (2009); and *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223 (2006).

---

[1]      Pursuant to FRAP 29(c)(5), CAOC certifies that no counsel for any party authored this brief in whole or in part, that no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief, and that no person other than CAOC, its members, and its counsel have made such a monetary contribution. Appellant Makaeff consents to the filing of this brief; appellee Trump University does not consent to its filing.

**II.     ARGUMENT**

It is well recognized that the anti-SLAPP law is one of the most important laws protecting consumers in California. Correct judicial interpretation is thus necessary in order for consumers and their attorneys to protect consumers' legal rights and interests. As such, CAOC urges this Court to strike the counterclaims pursuant to California's anti-SLAPP law because failure to do so would result in manifest injustice to the appellant and would also weaken anti-SLAPP standards in California to the detriment of the state's consumers. A reversal of this decision would be a victory for California consumers and the legal regimes enacted for their protection.

    **A.     The District Court's Order Erodes the High Standards Set by the California Legislature for SLAPP Actions**

Counterclaims like the defamation claim in this matter were the reason that anti-SLAPP legislation was passed in California, and dismissal of the counterclaims in this action would serve to further the intent of the Legislature. When the anti-SLAPP statute was signed into law in 1993, the Legislature purposely used very broad language when describing the conduct that the law aims to protect. Court opinions interpreting the statute demonstrate the broad nature of the anti-SLAPP law.[2] The law

---

[2]     *See, e.g., Padres L.P. v. Henderson*, 114 Cal. App. 4th 495, 508 (4th Dist. 2003) (anti-SLAPP statute is to be construed broadly).

was also specifically amended in 1997 to clarify that the statute is to be construed broadly.[3]

The anti-SLAPP law requires that a SLAPP plaintiff (here, appellee Trump University) establish that there is a probability that the plaintiff will prevail on the claim.[4] A probability standard requires more than a simple recitation of the elements of a claim. The plaintiff "'must demonstrate that the complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"[5] The burden on the SLAPP plaintiff also requires that any probability of a successful claim be established by admissible evidence. "'An assessment of the probability of prevailing on the claim looks to *trial*, and the evidence that will be presented at that time . . . [s]uch evidence must be *admissible*.'"[6]

Thus, the anti-SLAPP probability standard is a higher standard than is applicable for other civil claims, and CAOC joins appellant Makaeff's arguments in

---

[3]  *See* Cal. Code Civ. Proc. §425.16(a) (1997 Amendments) ("To this end, this section shall be construed broadly.").

[4]  Cal. Code Civ. Proc. § 425.16(b)(1).

[5]  *Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (2002) (citation omitted).

[6]  *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 656 (1996), *disapproved in part on other grounds*, *Equilon Ent. v. Consumer Cause, Inc.,* 29 Cal. 4th 53, 67 n.5 (2002) (citation omitted, emphasis in original).

her principal brief that the defamation counterclaim asserted by appellee Trump University fails to meet this higher standard. Further, weakening of the heightened SLAPP action evidentiary standards would prejudice consumers by allowing more meritless claims to make it past an anti-SLAPP motion to strike with generalized claims made in pleadings instead of through admissible evidence.

These higher standards for SLAPP plaintiffs do not result in undue prejudice to SLAPP plaintiffs, but their interests must be balanced against the interest in having strong anti-SLAPP laws. As anti-SLAPP scholar Penelope Canan noted:

> Corporate defendants have far greater resources to defend themselves when sued, and as a group, are far less likely - or not likely at all - to be chilled in the exercise of their First Amendment rights. Wealthy corporate defendants, some with their own legal departments, simply do not suffer the chilling effect on their rights when faced with a lawsuit claiming, for example, false advertising or fraud or illegal business practices, that common citizens suffer when sued for speaking out.[7]

**B.  Dismissing the Counterclaim Would Promote a Strong Anti-SLAPP Law as Well as a Wide Range of Other Consumer Interests**

Any weakening of California's anti-SLAPP law would work to change basic motivations of consumers. Consumers should be motivated to communicate vital information about businesses and firms into the marketplace. Weak anti-SLAPP laws

---

[7]  California Senate Judiciary Committee Analysis of SB 1651 (2001-2002 Session) (available at http://www.leginfo.ca.gov/pub/01-02/bill/sen/sb_1651-1700/sb_1651_cfa_20020515_112417_sen_comm.html).

would change many consumers' motivations to those of apathy and indifference in fear of a retaliatory lawsuit.

In today's consumer marketplace, successful firms know that their products and services will ultimately be judged based on their quality. Having consumers willing and able to communicate will improve the consumer marketplace and will allow for a more competitive and transparent market. Without the free flow of information, consumers and markets will both be adversely affected. Consumers will be forced to rely on conjecture and the self-serving advertisements of firms, instead of customer reviews of other similarly situated consumers.

As access to information becomes easier, the legal regime should not evolve in a way to inhibit the free flow of information. Consumers need to be able to communicate freely into the marketplace of ideas in order for that marketplace to operate effectively. A fear of reprisal lawsuits will limit consumers from effectively policing the marketplace through unfettered communication. If consumers are forced to seek legal redress for their grievances, this should not create a cause of action for their adversaries.

The First Amendment's right to petition the government for redress of grievances allows individuals to seek redress without fear of retaliation. Although Cal. Code Civ. Proc. § 425.16 sets out a mere rule of procedure, it is founded in the constitutional doctrine that those who petition the government are essentially immune

from liability.[8] The right to petition government for redress of grievances is so basic that it was included in the United States Declaration of Independence and in the First Amendment to the United States Constitution. It is arguably the oldest protected right, with roots dating back to the British Magna Carta.

The right to petition is much broader than the simple act of filing a lawsuit. Non-petitioning conduct is within the protected "breathing space" of the right of petition if that conduct is (1) incidental or reasonably related to an actual petition or actual litigation or to a claim that could ripen into a petition or litigation and (2) the petition, litigation, or claim is not a sham.[9]

Any chill in the right to petition would necessarily work to chill the other protections found in the First Amendment:

> It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of the people peaceably to assemble and to petition for redress of grievances. All these, though not identical, are inseparable. They are cognate rights, and therefore are united in the First Article's assurance.[10]

Deciding to get an education is one of the most important decisions that a consumer can make. For appellant Makaeff in the present action, her choice to attend

---

[8] *Ludwig v. Superior Court*. 37 Cal. App. 4th 8, 21 (1995) (citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993)).

[9] *Tichinin v. City of Morgan Hill,* 177 Cal. App. 4th 1049, 1066 (2009).

[10] *Thomas v. Collins,* 323 U.S. 516, 530 (1946).

- 7 -

Trump University had severe consequences. Only communication with other consumers will allow others to judge the advertising claims made by firms and businesses. This communication should be promoted instead of hindered. Intimidation of consumers through litigation should not be tolerated.

### III. CONCLUSION

Striking appellee Trump University's counterclaims in this action pursuant to California's anti-SLAPP law would promote consumer interests and help to end intimidation through litigation.

DATED: June 2, 2011    Respectfully submitted,

SCOTT + SCOTT LLP
CHRISTOPHER M. BURKE (214799)

/s/ Christopher M. Burke
CHRISTOPHER M. BURKE

707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619/233-4565
619/233-0508 (fax)

Attorneys for *Amicus Curiae* Consumer Attorneys of California

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

The undersigned counsel certified that *Amicus Curiae* Consumer Attorneys of California's brief uses a proportionally spaced Times New Roman typeface, 14-point, and the text of the brief comprises 1,689 words according to the word count provided by Microsoft Word 2003 word processing software.

/s/ Christopher M. Burke
CHRISTOPHER M. BURKE

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2011, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 2, 2011 at San Diego, California.

/s/ Christopher M. Burke
CHRISTOPHER M. BURKE