No. 11-55016

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

TARLA MAKAEFF, Individually and on Behalf of All Others Similarly Situated,

Plaintiff-Counter-Defendant-Appellant,

vs.

TRUMP UNIVERSITY, LLC,

Defendant-Counter-Claimant-Appellee.

Appeal from the United States District Court
for the Southern District of California
No. 3:10-cv-00940-IEG(WVG)
The Honorable Irma E. Gonzalez

ANSWERING BRIEF OF DEFENDANT-COUNTER-CLAIMANT-APPELLEE
TRUMP UNIVERSITY, LLC

JILL A. MARTIN (245626)
c/o TRUMP NATIONAL GOLF CLUB
One Ocean Trails Drive
Rancho Palos Verdes, CA 90275
Telephone: (310) 303-3225
Facsimile: (310) 265-5522

Attorney for Defendant-Counter-Claimant-Appellee

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rules of Appellate Procedure 26.1, appellee Trump University, LLC (named changed to "The Trump Entrepreneur Initiative LLC" pursuant to the Certificate of Amendment of the Articles of Organization filed on May 21, 2010) ("Trump University") makes the following corporate disclosure statement:  No publicly held company owns more than 10% of Trump University's stock.  DJT Entrepreneur Member LLC holds a controlling interest in Trump University.

DATED:  AUGUST 15, 2011                  Respectfully submitted,

s/ JILL A. MARTIN_____
JILL A. MARTIN
Attorney for Defendant-Counter-Claimant-
Appellee Trump University, LLC

c/o Trump National Golf Club
One Ocean Trails Drive
Rancho Palos Verdes, CA 90275
Tel:  (310) 303-3225
Fax:  (310) 265-5522
Email:  jmartin@trumpnational.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

I.      INTRODUCTION ............................................................... 1

II.     JURISDICTIONAL STATEMENT ................................... 4

III.    STANDARD OF REVIEW ................................................ 4

IV.     STATEMENT OF THE ISSUES ...................................... 5

V.      STATEMENT OF FACTS AND PROCEEDINGS BELOW ...................... 6

        A.      Factual Background .................................................. 6

                1.      Trump University .................................. 6

                2.      Tarla Makaeff ..................................... 7

        B.      Trump University's Counterclaim ....................... 12

VI.     SUMMARY OF ARGUMENT .......................................... 14

VII.    ARGUMENT ..................................................................... 16

        A.      THE DISTRICT COURT ERRED IN FINDING THAT THE
                COUNTERCLAIM ARISES FROM PROTECTED ACTIVITY ...... 17

        B.      THE DISTRICT COURT CORRECTLY DECIDED THAT
                TRUMP UNIVERSITY IS NOT A PUBLIC FIGURE ..................... 21

                1.      The District Court Correctly Held That Trump University
                        Is Not An "All Purpose" Public Figure ..................... 21

                        a.      Using the term "University" in its name does not
                                make Trump University a public figure ......................... 22

                        b.      Trump University is not a public figure due to its
                                association with Donald Trump ...................................... 27

                2.      The District Court Correctly Held that Trump University
                        Is Not A "Limited Purpose" Public Figure ................... 32

                        a.      Trump University was not involved in a public
                                controversy ................................................................. 32

i

b.  Trump University did not inject itself into a public controversy to influence its outcome..............................34

c.  Makaeff's defamatory statements were not germane to Trump University's participation in a public controversy ...................................................37

3.  The District Court Correctly Held That Trump University's Advertising Campaign Did Not Convert It Into A Public Figure ..............................................38

4.  Trump University Has Shown Actual Malice ..........................42

C.  The District Court Correctly Held that Makaeff's Statements are Actionable Statements of Fact.........................................45

D.  The District Court Correctly Held That Trump University Need Not Show Actual Damages........................................50

E.  The District Court Correctly Held that Makaeff's Statements Are Not Privileged Communications .................................54

1.  Makaeff's Statements Were Not Made in a Judicial or Quasi-Judicial Proceeding ......................................54

2.  The Defamatory Statements Have No Connection or Logical Relation to the Action.............................................58

3.  The Purpose of the Statute Would Not be Advanced by Extending the Privilege to Protect Makaeff's Communications ......................................................61

VIII. CONCLUSION.................................................................62

CERTIFICATE OF COMPLIANCE......................................................63

STATEMENT OF RELATED CASES .................................................64

CERTIFICATE OF SERVICE ...........................................................65

# TABLE OF AUTHORITIES

## CASES

*Albergo v. Immunosyn Corp.,*
   No. 09cv2653 DMS(AJB), 2011 U.S. Dist. LEXIS 5455
   (S.D. Cal. Jan. 20, 2011)....................................................................53

*American Future Sys., Inc. v. BBB,*
   923 A.2d 389 (Pa. 2007)....................................................................39

*American Prods., Inc. v. Law Offices of Geller, Stewart & Foley, LLP,*
   37 Cal. Rptr. 3d 93 (Cal. App. 2005) ...............................................56

*Ampex Corp. v. Cargle*,
   27 Cal. Rptr. 3d 863 (Cal. App. 2005) .............................................32

*Annette F. v. Sharon S.,*
   15 Cal. Rptr. 3d 100 (Cal. App. 2004) .......................................33, 42

*Ascherman v. Natanson,*
   100 Cal. Rptr. 656 (Cal. App. 1972) .................................................60

*Baker v. Los Angeles Herald Examiner,*
   721 P.2d 87 (Cal. 1986).....................................................................47

*Barnes-Hind, Inc. v. Superior Court,*
   226 Cal. Rptr. 354 (Cal. App. 1986) .................................................51

*Bates v. Campbell*,
   2 P.2d 383 (1931) ..............................................................................51

*Batzel v. Smith,*
   333 F.3d 1018 (9th Cir. 2003) ...........................................................16

*Blanchard v. DIRECTV, Inc.,*
   20 Cal. Rptr. 3d 385 (Cal. App. 2004) .............................................56

*Block v. Sacramento Clinical Labs Inc.,*
   182 Cal. Rptr. 438 (Cal. App. 1982) .................................................60

*Blue Ridge Bank v. Veribanc, Inc.,*
   866 F.2d 681 (4th Cir. 1989) .............................................................39

*Byers v. Southeastern Newspaper Corp.,*
    288 S.E.2d 698 (Ga. App. 1982) ................................................................25

*Campanelli v. Regents of the Univ. of Cal.,*
    51 Cal. Rptr. 2d 891 (Cal. App. 1996) ...............................................45, 47

*Carver v. Bonds,*
    37 Cal. Rptr. 3d 480 (Cal. App. 2005) ......................................19, 20, 34, 37

*Christian Research Institute v. Alnor,*
    55 Cal. Rptr. 3d 600 (Cal. App. 2007) .........................................................44

*Costa v. Superior Court,*
    204 Cal. Rptr. 1 (Cal. App. 1984) ...............................................................58

*Curtis Pub. Co. v. Butts,*
    388 U.S. 130 (1967).............................................................................21, 26

*Damon v. Ocean Hills Journalism Club,*
    102 Cal. Rptr. 2d 205 (Cal. App. 2000) ......................................................18

*Dove Audio, Inc. v. Rosenfield, Meyer & Susman,*
    54 Cal. Rptr. 2d 830 (Cal. App. 1996) ........................................................59

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
    472 U.S. 749 (1985).....................................................................................52

*Edwards v. Centex Real Estate Corp.,*
    61 Cal. Rptr. 2d 518 (Cal. App. 1997) .................................54, 55, 56, 61, 62

*Feldman v. 1100 Park Lane Assocs.,*
    74 Cal. Rptr. 3d 1 (Cal. App. 2008) ............................................................60

*Gallman v. Carnes,*
    497 S.W.2d 47 (Ark 1973) ..........................................................................26

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1971)...................................... 12, 21, 23, 27, 31, 52

*Gilbert v. Sykes,*
    53 Cal. Rptr. 3d 752 (Cal. App. 2007) .................................32, 35, 36, 38, 53

*Greenbelt Coop. Publ'g Ass'n v. Bresler,*
    398 U.S. 6 (1970)..........................................................................................48

iv

*Gregory v. McDonnell Douglas Corp.*,
    552 P.2d 425 (Cal. 1976)...................................................................47, 48, 50

*Greka Integrated Inc. v. Lowrey*,
    35 Cal. Rptr. 3d 684 (Cal. App. 2005) ........................................................17

*Hagberg v. Cal. Fed. Bank FSB*,
    81 P.3d 244 (Cal. 2004)...............................................................................57

*Hentzen Contractors, Inc. v. Wichita*,
    1991 Kan. App. LEXIS 510 (Kan. App. 1991) .................................29, 30, 31

*Howard v. Drapkin*,
    222 Cal. Rptr. 893 (Cal. App. 1990) ...........................................................57

*Hudgens v. Prosper, Inc.*,
    243 P.3d 1275 (Utah 2010)..........................................................................41

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979)........................................................................35, 36, 37

*Info. Control Corp. v. Genesis One Computer Corp.*,
    611 F.2d 781 (9th Cir. 1980) .................................................................45, 47

*Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*,
    66 F.Supp.2d 1117 (C.D. Cal 1999) .............................................................40

*Ithaca Coll. v. Yale Daily News Publ'g Co.*,
    433 N.Y.S.2d 530 (N.Y. App. Div. 1980), *aff'd*,
    445 N.Y.S.2d 621 (N.Y. App. Div. 1981).............................................22, 23

*Johnson v. Bd. of Junior Coll. Dist. #508*,
    334 N.E.2d 442 (Ill. App. 1975)...................................................................26

*Kahn v. Bower*,
    284 Cal. Rptr. 244 (Cal. App. 1991) ...........................................................45

*Komarova v. Nat'l Credit Acceptance*,
    95 Cal. Rptr. 3d 880 (Cal. App. 2009) .........................................................57

*Long Island Univ. v. Grucci for Congress, Inc.*,
    781 N.Y.S.2d 148 (N.Y. App. Div. 2004)....................................................23

*Manufactured Home Communities v. County of San Diego*,
    544 F.3d 959 (9th Cir. 2008) .......................................................................46

*Masson v. New Yorker Magazine, Inc.,*
    501 U.S. 496 (1991)...................................................................................26

*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps,*
    121 Cal. Rptr. 2d 794 (Cal. App. 2002) .......................................17

*Mattel, Inc. v. MCA Records, Inc.,*
    28 F.2d 1120 (C.D. Cal. 1998), *aff'd*
    269 F.3d 894 (9th Cir. 2002) ........................................................39

*Melaleuca, Inc. v. Clark,*
    78 Cal. Rptr. 2d 627 (Cal. App. 1999) .........................................49

*Milkovich v. Lorain Journal Co.,*
    487 U.S. 1 (1990)...............................................................45, 48

*Moore v. Conliffe,*
    871 P.2d 204 (Cal. 1994)................................................................57

*Moyer v. Amador Valley Joint Union High School Dist.,*
    275 Cal. Rptr. 494 (Cal. App. 1990) ...........................................45

*Navellier v. Slettern,*
    29 Cal.4th 82 (Cal. 2002) .............................................................17

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964)........................................................................21

*Nguyen-Lam v. CAO,*
    90 Cal. Rptr. 3d 205 (Cal. App. 2009) .........................................44

*Passman v. Torkan,*
    40 Cal. Rptr. 2d 291 (Cal. App. 1995) .........................................58

*Rancho La Costa, Inc. v. Superior Court,*
    165 Cal. Rptr. 347 (Cal. App. 1980) ...........................33, 34, 38, 39

*Reader's Digest Assn. v. Superior Ct.,*
    690 P.2d 610 (Cal. 1984)................................................................42

*Rivero v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO,*
    130 Cal. Rptr. 2d 81 (Cal. App. 2003) ...................................18, 19

*Rodriguez v. Panayiotou,*
    314 F.3d 979 (9th Cir. 2002) ..................................................45, 50

*Rosanova v. Playboy Enterprises, Inc.,*
411 F.Supp. 440 (S.D.Ga. 1976) ................................................28

*Rose v. Koch,*
154 N.W.2d 409 (Minn. 1967) ..................................................26

*Rosenthal v. Great Western Fin. Securities Corp.,*
14 Cal.4th 394 (1996)................................................................17

*Rosenthal v. Irell & Manella,*
185 Cal. Rptr. 92 (Cal. App. 1982) ............................................60

*Rothman v. Jackson,*
57 Cal. Rptr. 2d 284 (Cal. App. 1996) ..................................58, 59

*Rubin v. Green,*
847 P.2d 1044 (Cal. 1993).........................................................56

*Rusheen v. Cohen,*
128 P.3d 713 (Cal. 2006)...........................................................60

*Sacramento Brewing Co. v. Desmond, Miller & Desmond,*
89 Cal. Rptr. 2d 760 (Cal. App. 1999) ..................................60, 61

*Schiavone Const. Co. v. Time, Inc.,*
619 F.Supp. 684 (D.N.J. 1985), *aff'd in part, and rev'd in part*
*on other grounds,* 847 F.2d 1069 (3d Cir. 1988) ..............28, 29, 31

*Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.,*
473 F.Supp.2d 1083 (S.D. Cal. 2007) ........................................56

*Silberg v. Anderson,*
786 P.2d 365 (Cal. 1990)......................................................54, 59

*Sipple v. Foundations for Nat. Progress,*
83 Cal. Rptr. 2d 677 (Cal. App. 1999) ......................................42

*St. Amat v. Thompson,*
390 U.S. 727 (1968)..................................................................44

*Steaks Unlimited v. Deaner,*
623 F.2d 264 (3d Cir. 1980) ......................................................40

*Sunshine Sportswear & Electronics, Inc. v. WSOC Televisions,*
738 F. Supp. 1499 (D.C.S. 1989) ..............................................40

*Susan A. v. County of Sonoma,*
    3 Cal. Rptr. 2d 27 (1991) ...............................................................................59

*Underwager v. Channel 9 Australia,*
    69 F.3d 361 (9th Cir. 1995) .........................................................................48

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.,*
    190 F.3d 963 (9th Cir. 1999) ...............................................................16, 17

*University of the South v. Berkley Publ'g Corp.,*
    392 F. Supp. 32 (S.D.N.Y. 1974) .........................................................22, 23

*Vegod Corp. v. American Broadcasting Co.,*
    25 Cal.3d 763 (1979) .............................................................................38, 51

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) .......................................................................4

*Von Saher v. Norton Simon Museum of Art of Pasadena,*
    592 F.3d 954 (9th Cir. 2010) .......................................................................13

*Waldbaum v. Fairchild Publications, Inc.¸*
    627 F.2d 1287 (D.C. Cir. 1980), *cert. denied*
    449 U.S. 898 (1980)...................................................................33, 34, 36

*Walko v. Kean College,*
    561 A.2d 680 (N.J. Super. 1988)................................................................26

*Weinberg v. Feisel,*
    2 Cal. Rptr. 3d 385 (Cal. App. 2003) .........................................................51

*Wilbanks v. Wolk,*
    17 Cal. Rptr. 3d 497 (Cal. App. 2004) ..................................................19, 20

*Wilcox v. Superior Court,*
    33 Cal. Rptr. 2d 446 (Cal. App. 1994) .......................................................16

*Wolston v. Reader's Digest Ass'n,*
    443 U.S. 157 (1979)...................................................................32, 34, 37

*Yow v. National Enquirer, Inc.,*
    550 F.Supp.2d 1179 (E.D. Cal. 2008) .........................................................51

**STATUTES**

California Civil Code § 45(a) ...................................................................51

California Civil Code § 47(b) ...........................................................54, 59

California Code of Civil Procedure § 425.16 ...............................................*passim*

California Code of Civil Procedure § 425.16(e).......................................18

**I.**

**INTRODUCTION**

The question before this Court is whether an individual who repeatedly accuses a small, private limited liability company of criminal conduct can escape liability under California Code of Civil Procedure section 425.16, known as the anti-SLAPP statute[1].  As correctly decided by the district court twice, the answer is **<u>no</u>**.  Although the district court incorrectly decided that Tarla Makaeff ("Makaeff") met her burden of showing that Trump University's counterclaim arises from her protected activity, it correctly decided that Trump University adequately demonstrated that it will succeed on its defamation claim and therefore denied Makaeff's anti-SLAPP motion.

Trump University, a 39- employee company, provided Makaeff with seminars and workshops regarding real estate investment.  While attending these programs over a ten-month period, Makaeff consistently praised Trump University in written evaluations and in a videotaped testimonial.  She indicated that she would she continue to sign up for more Trump University programs and recommend that others do so as well.

---

[1] Referred to herein as the anti-SLAPP law or section 425.16.  All applicable statutes, including section 425.16, are contained in the Addendum filed by Makaeff with her Opening Brief.

1

Upon completion of the programs, Makaeff found herself in financial trouble completely unrelated to her transaction with Trump University. Needing money, Makaeff demanded that Trump University give her a full refund. Recognizing that Makaeff had already received the full benefit of the programs and that her refund request was 10-months late pursuant to its refund policy, Trump University declined her request but offered her more programs and mentoring which she accepted. As soon as she completed the additional programs, Makaeff sent letters to her bank and the Better Business Bureau ("BBB") alleging that Trump University committed specific crimes, including: "opening credit cards in the names of its students, without those students' permission," "identity theft," "grand larceny," "illegal bait and switch tactics," the "unsolicited taking of personal credit by trickery," and that Trump University "lied" when representing that it provided mentoring and coaching sessions. She admitted in her letters that her sole goal was to obtain a refund of the money she paid to Trump University.

Upon learning of the defamation, Trump University filed suit against her. In an attempt to escape liability for her defamatory statements, Makaeff filed an anti-SLAPP motion, which the district court properly denied.

In reviewing the district court's decision *de novo,* this Court should affirm the denial of Makaeff's anti-SLAPP motion. Although the district court found that the counterclaim arises from Makaeff's protected activity, such a finding was in

error, as Makaeff's statements to her bank and the BBB are not issues of public interest and therefore are not protected activity. For this reason alone, this Court should affirm the district court's denial of Makaeff's anti-SLAPP motion.

As separate grounds, this Court should affirm the district court's denial of Makaeff's anti-SLAPP motion because Trump University has met its burden of establishing that it will succeed on the merits of its claims. The district court also correctly held that Trump University is not a public figure, so it need not show malice.

This gist of Makaeff's motion and appeal is that she seeks to convert a small, private company into a public figure. This requires that she ignore Supreme Court precedent limiting public figure status and an unprecedented expansion of the law whereby a private figure's mere association with a public figure, or use of the term "university" in its name, or aggressive advertising is sufficient to convert it into a public figure. As the district court correctly held, no controlling authority allows for such a result.

The district court also correctly held that Makaeff cannot escape liability for her clear allegations of criminal conduct by arguing that her statements are mere hyperbole, because her statements are subject to proof of truth or falsity. Further, because Makaeff's allegations of crimes are indisputably defamatory per se, by statute, Trump University need not prove special damages. Finally, the district

court correctly held that Makaeff's attempts to re-cast her comments as statements made in a judicial proceeding so that she can avail herself of the litigation privilege clearly fail, as such statements were made as a tactic to get a refund, far before litigation became more than a mere possibility.

Makaeff must be held accountable for her defamatory statements. Makaeff has not met her initial burden of proving that the counterclaim arises from her protected activity and Trump University has shown that it can prevail on the merits of its claim. Accordingly, this Court should affirm the decision of the district court denying Makaeff's anti-SLAPP motion.

## II.

## JURISDICTIONAL STATEMENT

Trump University concurs with Makaeff's jurisdictional statement regarding the appeal.

## III.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's denial of a motion to strike under California's anti-SLAPP law. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1102 (9th Cir. 2003).

# IV.

## STATEMENT OF THE ISSUES

The following issues are presented in this appeal:

1.     Whether the district court erred in finding that the counterclaim arises from Makaeff's protected activity.

2.     Whether the district court correctly held that Trump University, a small, limited liability company is not a "public figure" required to prove malice.

3.     Whether the district court correctly held that Makaeff's statements, including those that Trump University committed crimes, are actionable statements of fact.

4.     Whether the district court correctly held that Makaeff's defamatory statements per se are actionable without proof of special damages.

5.     Whether the district court correctly held that Makaeff's defamatory statements made to third-parties, including the BBB and her bank are not protected by the litigation privilege.

# V.

## STATEMENT OF FACTS AND PROCEEDINGS BELOW

### A.  Factual Background

### 1.  Trump University

Trump University is a small, private company with 39 employees.  ER0212[2].

It offers training, instruction, mentoring and other support for those interested in

learning about real estate investment.  ER0213.  Trump University promises its

attendees that it will provide useful information, skills, and an opportunity to

succeed.  ER0304.  It does not promise specific results, profits, or wealth to its

attendees, as it recognizes that a multitude of factors may impact an individual's

likelihood of success, including varying ability, experience, expectations,

resources, education level, market conditions, local properties, and competition.

ER0304.  For those attendees unsatisfied with the program, Trump University

offers a full money-back guarantee if they cancel their contract within three days of

enrollment.  ER0213.

The overwhelming majority of Trump University attendees reportedly are

satisfied with their experience with the program.  Those who responded to written

surveys, 95% rated the programs, seminars and workshops as "excellent" in

---

[2] For ease of reference, all factual citations in this brief are made to the Excerpts of
Record as "ER" followed page number and to the Supplemental Excerpts of
Record as "SER" followed by page number.

quality, relevance and usefulness and <u>99%</u> stated they would attend another Trump University program and would recommend others do so as well.  ER0213.

### 2. Tarla Makaeff

In August 2008, Makaeff attended Trump University's three-day program entitled "Fast Track to Foreclosure Workshop."  ER0213.  Following that program, she enrolled in Trump University's "Trump Gold Elite Program" which entitled her to: (1) attend four three-day advanced training workshops over the next year at no charge; (2) receive training publications, software and other materials; (3) participate in a three-day mentoring session; and (4) have her business incorporated.  ER0213.  Makaeff availed herself of all of those benefits.  ER0213.

Following every stage of the Trump Gold Elite Program, Makaeff positively evaluated the program.  After participating in the three-day mentoring session, in September 2008, Makaeff filled out a "Field Mentor Evaluation Form" describing her experience as "amazing," rating her mentor as "excellent," and rating all ten other facets of the program as "excellent."  ER0214.

In October 2008, after attending a three-day "Wealth Preservation Asset Protection Retreat," she again rated all facets of the program as "excellent" and indicated that she would recommend Trump University seminars, would attend more programs, and even indicated that she wished to be contacted by Trump University about such opportunities.  ER0214.  Following her attendance at a

three-day "Creative Financing Real Estate Workshop," she again rated all five facets of the program as "excellent," again indicated she would recommend Trump University seminars, and stated that "nothing could be improved." ER0214. After participating in two more three-day programs in early 2009, the "Commercial and Multi-Family Retreat" and "Quick Turn Real Estate Retreat," Makaeff did not fill out an evaluation form, but was apparently satisfied as she provided no negative comments orally or in writing. ER0214.

In April 2009, after seven months in the program and after completing the programs to which she was entitled and for which she provided glowing reviews, Makaeff wrote to Trump University seeking a refund, explaining that she had "earned 6 figures in the past but lost marketing business when my client restructured due to the economy" and therefore was in a "very precarious financial position." ER0211. She further explained that she "seriously need[s] the money" and was "under an insane amount of stress and extremely discouraged and often depressed about where [she is] at." ER0211. In begging Trump University to "do whatever it takes to help her further" she explained that she was "trying to rescue [herself] but [she] need[s] a lifeline." ER0211. At no time did Makaeff ever seek to cancel her contract within the three-day period prescribed by Trump University, or any time thereafter. ER0214. Trump University denied Makaeff's request for a refund, explaining that it could not refund her money as she had already

-8-

participated in every program and received the information, skill set, and mentoring for which she paid. ER0214. Nevertheless, as a showing of good faith, Trump University offered, and Makaeff accepted, three additional coaching sessions and participated in at least 15 telephone conferences and email exchanges with another coach. ER0214-15.

In June 2009, Makaeff attended her last Trump University program entitled "Wealth Summit." ER0215. At the conclusion of the program, Makaeff again expressed her satisfaction by this time providing a videotaped testimonial praising her mentor and Trump University. ER0215.

A few short months after completing the programs which she repeatedly praised, apparently because her financial situation had deteriorated, Makaeff turned on Trump University. ER0215. Beginning in approximately September 2009, Makaeff began a course of publishing defamatory statements about Trump University in letters to the BBB and her bank. ER0215; ER0220-45. Such defamation included statements that Trump University engaged in:

> (a) "fraudulent business practices" (ER0220);
>
> (b) "deceptive business practices" (ER0220; ER0227);
>
> (c) "illegal predatory high pressure tactics" (ER0220; ER0227);
>
> (d) "business practices [that] are criminal" ((ER0221);
>
> (e) a "clear practice of personal financial information fraud" (ER0221);

(f) "illegal. . . bait and switch" (ER0221);

(g) a "brainwashing scheme" (ER0222);

(h) "outright fraud" (ER0222);

(i) "grand larceny" (ER0222);

(j) "identify theft" (ER0222);

(k) the "unsolicited taking of personal credit and trickery into opening credit cards without . . . approval" (ER0223);

(l) "fraudulent business practices utilized for illegal material gain" (ER0223);

(m) "felonious teachings" (ER0227);

(n) teaching practices that are "outright criminal" (ER0227);

(o) "neurolinguistic programming and high pressure sales tactics based on the psychology of scarcity" (ER0227);

(p) "unethical tactics" (ER0227); and

(q) a "gargantuan amount of misleading, fraudulent, and predatory behavior. (ER0227)"

*See also* ER0311-312.

She continued to defame Trump University in November 2009, by repeating many of the defamatory statements above, and adding additional ones, including that Trump University engaged in:

-10-

(a)    "blatant lie[s]" when it represented that it provided mentoring and coaching sessions (ER0244);

(b)    "fraudulent misleading tactics" (ER0244); and

(c)    "brainwashing" that is "downright manipulative" (ER0244).

*See also* ER0312.

Makaeff's defamatory statements are demonstrably false.  ER0216.  Trump University has never engaged in the illegal acts alleged by Makaeff, including never engaging in bait and switch tactics, brainwashing schemes, grand larceny, identify theft, the unsolicited taking of personal credit and trickery, or neurolinguistic programming.  ER0216.  Trump University has also never been cited or charged for any criminal activity alleged by Makaeff.  ER0216.

Trump University's business as a provider of courses concerning real estate investment is dependent upon the company's excellent reputation of providing unique, hands-on, useful information and training to its attendees.  ER0216.  Consequently, as a result of Makaeff's defamatory statements, Trump University has suffered damages, including:  lost profits as reflected in the sharp decline in its profits which began shortly after and as a result of Makaeff's statements; large expenses incurred in responding and defending itself from Makaeff's defamatory statements; and irreparable damage to its reputation.  ER0216-17.

## B.    Trump University's Counterclaim

As Makaeff caused substantial damage to Trump University through her persistent, malicious, and knowingly false attacks, on May 26, 2010, Trump University filed a counterclaim against her, alleging defamation per se. ER0303-14.

Attempting to escape liability for her tortious conduct, on June 30, 2010, Makaeff filed a Special Motion to Strike Trump University's Counterclaim pursuant to California Code of Civil Procedure section 425.16.  ER0246-49.  After briefing and oral argument, the district court denied Makaeff's motion.  ER0004.

The district court held that while Makaeff made a prima facie showing that Trump University's counterclaim arises from protected activity, Trump University demonstrated by a reasonable probability that it would prevail on the merits of its claim.  ER0007.  In reasoning that Trump University met its burden, the district court recognized that while Donald Trump may be an "all purpose" public figure, Trump University is not, and its mere association with Donald Trump or its extensive advertising do not make it an "all purpose" or a "limited purpose" public figure as it "assumed no role of 'special prominence in the affairs of society.'" Therefore, the district court held that Trump University need not prove that the defamatory statements were made with actual malice.  ER0009-10 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1971)).

-12-

The district court further held that at least some of Makaeff's statements were actionable statements of fact and Trump University made a prima facie showing that such statements are false. ER0011-13. As such statements accused Trump University of crimes, they are libelous per se and therefore, the district court held that such statements are actionable without proof of special damages. ER0002.

Finally, the district court held that Makaeff's statements are not protected by the litigation privilege. ER0015. At the time Makaeff made the defamatory statements, litigation was only a mere possibility and had not ripened into a proposed proceeding. The statements also had no "connection or logical relation" to her subsequent lawsuit against Trump University, as the statements were made to third-parties. ER0015.

Having lost her anti-SLAPP motion at the district court level, Makaeff filed this appeal.[3]

---

[3] Makaeff also filed a Request for Judicial Notice ("RJN") requesting that the Court expand the record on appeal beyond the evidence that was before the district court. On June 8, 2011, Trump University filed a response, explaining that the request was improper because: (1) the evidence was not presented to the district court; and (2) Makaeff did not seek judicial notice of the materials for the permitted, very limited purpose of determining "what information was in the public realm at the time," *Von Saher v. Norton Simon Museum of Art of Pasadena,* 592 F.3d 954, 960 (9th Cir. 2010), but rather for the content of the articles.

# VI.

## SUMMARY OF ARGUMENT

The anti-SLAPP law provides limited protection, reserved for situations where the defendant can demonstrate that a claim arises from protected activity and such claim is meritless. The district court erred in finding that Makaeff satisfied her initial burden of showing that the counterclaim arises from her protected activity because Makaeff's statements to her bank and the BBB were not in connection with an issue of public interest – consumer protection – but rather, Makaeff admittedly wrote the statements for the sole purpose of obtaining a refund. Accordingly, this court should deny Makaeff's anti-SLAPP motion on this ground.

The district court correctly held, however, that Trump University demonstrated that it will succeed on its claim against Makaeff, and therefore, properly denied the motion. In making this finding, the district court correctly found that Trump University is not a public figure required to prove actual malice. While Makaeff focuses her brief on actions of Donald Trump, such efforts are futile, as the counterclaim for defamation was brought by Trump University – not Donald Trump – and no controlling authority allows for the imputation of public figure status onto a small, private corporation simply because its association with a public figure.

-14-

Makaeff also argues that simply using the term "University" in its name is sufficient to show that Trump University is a public figure. Such arguments are unavailing, as again, no controlling case law authorizes such a broad finding.

Further, Trump University is not a limited purpose public figure because it did not thrust itself into a public controversy. Makaeff failed to show that her attempts to get a refund from her bank and the BBB evidence a public controversy, that Trump University injected itself into any alleged public controversy, and that the statements she made are germane to Trump University's participation in the public controversy. Trump University's advertising efforts are also insufficient to pull Trump University into a controversy, and no controlling authority supports Makaeff's position that advertising is enough to convert Trump University into a public figure. Nevertheless, even if Trump University is considered a public figure for purposes of Makaeff's motion, it has met its burden of demonstrating actual malice.

The district court also correctly held that the statements made by Makaeff, including accusing Trump University of crimes, were statements of fact, not opinion. Such statements are defamatory per se and Trump University need not show special damages.

Finally, the district court properly held that the litigation privilege does not protect Makaeff's pre-litigation communications. Makaeff's statements were made

-15-

far before litigation was more than a mere possibility and were in no way connected to the litigation process; rather, they were simply made to get a refund.

Accordingly, this Court should affirm the denial of Makaeff's anti-SLAPP motion on the grounds that Makaeff failed to show that her defamation arises from protected activity or, alternatively, on the grounds that Trump University has shown that it can prevail on the merits of its defamation claim against Makaeff.

## VII.

## ARGUMENT

The anti-SLAPP law provides limited protection to private citizens from meritless civil lawsuits aimed to punish them for exercising their political or legal rights. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 971 (9th Cir. 1999) ("*Newsham*"). It "does not apply in every case where a defendant may be able to raise a First Amendment defense to a cause of action." *Wilcox v. Superior Court,* 33 Cal. Rptr. 2d 446, 451-52 (Cal. App. 1994). Rather, the "purpose of an anti-SLAPP motion is to determine whether the defendant is being forced to defend against a ***meritless*** claim." *Batzel v. Smith,* 333 F.3d 1018, 1025 (9th Cir. 2003) (emphasis added).

The moving party can only prevail on an anti-SLAPP motion if it can establish a prima facie showing that the suit arises from the moving party's protected activity ***and*** the claimant cannot establish by a "reasonable probability"

that it will succeed on the merits of the claims. *Newsham,* 190 F.3d at 971;

*Navellier v. Slettern,* 29 Cal.4th 82, 89 (Cal. 2002) (a cause of action is subject to

being stricken under the anti-SLAPP statute only if it "arises from protected speech

or petitioning *and* lacks even minimal merit"). To meet its burden of showing that

it will succeed on the merits, plaintiff need only meet a minimal showing, with a

"stated and substantiated . . . legally sufficient claim." *Rosenthal v. Great Western*

*Fin. Securities Corp.,* 14 Cal.4th 394, 411-12 (1996); *see also Greka Integrated*

*Inc. v. Lowrey,* 35 Cal. Rptr. 3d 684, 691 (Cal. App. 2005); *Mattel, Inc. v. Luce,*

*Forward, Hamilton & Scripps,* 121 Cal. Rptr. 2d 794, 800 (Cal. App. 2002)

(motion must be denied if the claimant establishes a prima facie case with

evidence, that if believed by the trier of fact, will result in a favorable judgment).

## A.     THE DISTRICT COURT ERRED IN FINDING THAT THE COUNTERCLAIM ARISES FROM PROTECTED ACTIVITY

Makaeff admits that she sent letters to her bank and the BBB for the sole

purpose of obtaining a refund of her money. This is not protected conduct under

the anti-SLAPP statute. As explained above, to prevail under the anti-SLAPP

statute, Makaeff must make a prima facie showing that the counterclaim arises

from her protected activity. *Newsham,* 190 F.3d at 971. The anti-SLAPP statute

defines four categories of acts that are protected, and the district court incorrectly

held that Makaeff's allegations of criminal conduct fall under the fourth category,

which protects "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e); ER0007.

An issue of "public interest," under this provision is one that "impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity." *Damon v. Ocean Hills Journalism Club,* 102 Cal. Rptr. 2d 205, 212 (Cal. App. 2000); *Rivero v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO,* 130 Cal. Rptr. 2d 81, 86 (Cal. App. 2003).

In *Rivero,* a janitorial supervisor at a public university sued a union for defamation after it distributed documents containing accusations of bribery, nepotism, theft, and extortion. *Id.* at 83-84. The union filed an anti-SLAPP motion, arguing that the documents containing the alleged defamation were protected under section 425.16(e) because they addressed "unlawful workplace activities" which is a "matter of public interest particularly where it occurs at a publicly-financed institution." *Id*. at 85-86. The court rejected this argument, finding that the statements in the documents concerned the custodial staff, and the custodial staff was the only group directly involved or affected by the situation and therefore, the issue did not rise to the level of public interest. *Id.* at 90. It further rejected the union's contention that "any time a person criticizes an unlawful

workplace activity the statements concern a public policy," because if such were the case, every workplace dispute would be a matter of public interest. *Id.*

Similar to *Rivero*, where the statements concerned a small group of people, Makaeff's statements to her bank and the BBB do not rise to the level of public interest because her statements involve only herself and Trump University. Like *Rivero,* where the court reasoned that every workplace dispute cannot be converted to a public issue by characterizing it generally as a concern of unlawful workplace activity, Makaeff cannot re-characterize her personal dispute with Trump University as an issue of public interest simply by arguing – after the fact – that this is an issue of consumer protection.

Nevertheless, relying on *Carver v. Bonds,* 37 Cal. Rptr. 3d 480 (Cal. App. 2005) and *Wilbanks v. Wolk,* 17 Cal. Rptr. 3d 497 (Cal. App. 2004), the district court held that Makaeff's statements dealt with "an issue of public interest because the statements concern consumer protection information." ER0008. *Carver* and *Bonds* are distinguishable, however, because in both cases it was clear from the context of the communications that the statements were made to warn consumers and therefore were published for consumer protection purposes. For example, in *Carver,* the newspaper article warned readers not to rely on a doctor's alleged experiences. 37 Cal. Rptr. 3d at 493. In *Wilbanks,* statements on a website were

protected because they were in "the context of information ostensibly provided to aid consumers choosing among brokers."  17 Cal. Rptr. 3d at 508.

Unlike *Carver* and *Wilbanks,* it is clear from Makaeff's letters – admittedly written for the <u>sole</u> purpose of obtaining a refund – that the defamatory statements were not made in furtherance of "consumer protection."  By making her statements to her bank and the BBB, not potential consumers of Trump University who she sought to warn, Makaeff's statements were not made for consumer protection purposes.  The district court seemingly recognized this distinction, in stating in a footnote:

> Makaeff argues that Trump University's opposition shows that the allegations are limited to the letters to her bank and the BBB . . . If true, it is **not** clear that Makaeff's letters to the bank and the BBB concern consumer protection information.  The letters themselves suggest Makaeff's sole motivation in writing these letters was to obtain a refund.

ER0008, n.2 (emphasis added).

Because Makaeff's communications with her bank and the BBB do not involve an issue of public interest, she failed to demonstrate that the counterclaim arises from her protected activity.  Therefore, the district court erred in finding that Makaeff's activity is protected under section 425.16.  For this reason alone, this Court should affirm the denial of Makaeff's anti-SLAPP motion.

**B.  THE DISTRICT COURT CORRECTLY DECIDED THAT TRUMP UNIVERSITY IS NOT A PUBLIC FIGURE**

The district court correctly ruled that Trump University is not a public figure.  ER0009.  A public figure must prove that an alleged defamatory statement was made with actual malice.  *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964); *Curtis Pub. Co. v. Butts,* 388 U.S. 130, 133-34 (1967).  To be held to this higher standard of proving actual malice, a party must be found to be one of two types of public figures:  (1) an "all purpose" public figure; or (2) a "limited purpose" public figure.  *Gertz,* 418 U.S. at 344, 351.  An "all purpose" public figure is one who occupies "positions of such persuasive power and influence that they are deemed public figures for all purpose."  *Id.* at 344.  A "limited purpose" public figure is one who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."  *Id.* at 351.  Either type of public figure is generally found from "those who attain [public figure] status . . . [by] assum[ing] roles of special prominence in the affairs of society."  *Id.* at 345.  The district court correctly found that "Trump University has assumed no role of 'special prominence in the affairs of society.'"  ER0009 (citing *Gertz,* 418 U.S. at 351).

**1.     The District Court Correctly Held That Trump University Is Not An "All Purpose" Public Figure**

Trump University is a small, privately held limited liability company with only 39 employees.  ER0212.  Trump University has never sought the public's attention other than advertising its services for sale.  As a limited liability company, Trump University is separate and distinct from Donald Trump.  Nevertheless, Makaeff argues that Trump University is an "all purpose" public figure by virtue of: (1) the fact that it used the term "university" in its name and (2) its association with Donald Trump.  The district court correctly held that these arguments are meritless.

**a.     Using the term "University" in its name does not make Trump University a public figure**

No California case law advocates application of public figure status to a small, limited liability corporation simply because it formally called itself a "university."  Nevertheless, Makaeff relies on non-controlling authority involving accredited institutions of higher learning for the proposition that Trump University is an "all purpose" public figure by virtue of the term "university" in its name.  *See* Opening Brief of Appellant Tarla Makaeff ("Makaeff Br.") at 43 (citing *Ithaca Coll. v. Yale Daily News Publ'g Co.,* 433 N.Y.S.2d 530, 534 (N.Y. App. Div. 1980), *aff'd,* 445 N.Y.S.2d 621 (N.Y. App. Div. 1981); *University of the South v.*

*Berkley Publ'g Corp.,* 392 F. Supp. 32, 33 (S.D.N.Y. 1974); *Long Island Univ. v. Grucci for Congress, Inc.*, 781 N.Y.S.2d 148, 149 (N.Y. App. Div. 2004).

As accredited institutions of higher learning, Ithaca College, University of the South, and Long Island University occupy positions of "such persuasive power and influence" as to make them public figures. These institutions did not achieve such status simply because the words "college" or "university" are in their names, but rather because of their actions as accredited institutions. As explained by the *Ithaca College* court, Ithaca College is a public figure "[a]s a consequence of [its] service to the community as a whole" and the "public aspects of its formation, character and conduct." *Ithaca Coll.*, 433 N.Y.S.2d at 534. By "[a]ssumption of its role as a qualified educator of a large number of students . . . [that] serves the public good . . . and is recognized to be of 'general fame or notoriety in the community (with) pervasive involvement in the affairs of society' . . . [w]e cannot view such an institution of higher learning as other than a public figure for all purposes." *Id.* at 534 (quoting *Gertz*, 418 U.S. at 352).

Makaeff routinely admits that Trump University is a far cry from such educational institutions. For example, Makaeff's second amended complaint is replete with allegations that Trump University is not comparable to such accredited institutions:

- "In fact, rather than serving its students as a university or college, Defendant Trump University is more like an infomercial . . . ." ER0041.

- "Comparing Trump University to Harvard University is a bit like comparing a snake oil salesman to a brain surgeon.  First, Harvard is clearly an accredited institution while Trump is not . . . ." ER0042.

- "[Trump University] is not an accredited University." ER0054.

In arguments before the district court, Makaeff admitted:

- "Trump University is not a public school or even a college or university. Rather, Trump University is a private, unaccredited business that advertises and sells seminars and related products for a profit." SER36.

- "Trump University has no educational accreditation and confers no license, degree, or any credential upon completion.  As such, Trump University is not a 'university' or an educational institution." SER37.

Makaeff also describes Trump University as "pretending to be a noteworthy institution of higher learning."  Makaeff Br. at 42.

Contrary to her own admissions that Trump University should not be considered or even compared to the accredited universities or colleges such as those in the cases she relies on, Makaeff asks this Court to hold Trump University to the same standard applied to such institutions – that of a public figure.  Such

-24-

treatment is improper. Trump University's formal use of "university" in name does not convert it to a public figure and Makaeff cites no authority to the contrary.

Makaeff also argues that "school officials" and "college deans and professors" are public figures due to their position within a college or university. Makaeff Br. at 43-44. Like the institutions themselves, "school officials" *may* become public figures due to their actions in holding such positions. For example, in *Byers v. Southeastern Newspaper Corp.,* 288 S.E.2d 698, 701 (Ga. App. 1982), relied on by Makaeff, the court explained why the dean at a state college may be a public figure but a professor may not, finding:

> a distinct difference between the duties and responsibilities normally associated with the position of dean at a state college and those associated with a teaching position at such institution. While both positions are funded by the public, the holder of the former is very often called upon to make public speeches, formulate and implement policy decisions, introduce guests and speakers at the college, and to interact with the citizenry of the surrounding community.

While Makaeff relies on *Byers* for her position that "college deans and professors" are public figures as a virtue of their position, the *Byers* court does not make such a broad ruling. Instead, the dean in *Byers* was held to be a limited-purpose public figure due to his <u>actions</u> in connection with the controversy at hand. *Id.* at 721.

-25-

In all of the cases relied on by Makaeff, where individuals holding positions within academia were deemed public figures, such status was attained by conduct which brought them into the public eye.[4]

Unlike the public figures in the cases upon which she relies, Makaeff fails to show any conduct by Trump University demonstrating that it has the power and influence akin to that of an accredited educational institution or school official. Instead, Makaeff readily admits that Trump University is not an accredited college or university, nor is it an individual holding an esteemed position with an educational institution. Accordingly, by virtue of its name alone, Trump University is not an "all purpose" public figure.

---

[4] *See, e.g., Curtis Publ'g Co.,* 388 U.S. at 135-36 (athletic director and former football coach of the University of Georgia who was a "well-known and respected figure in coaching ranks"); *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 499-500 (1991) (noted psychoanalyst and director of the Sigmund Freud Archives); *Johnson v. Bd. of Junior Coll. Dist. #508*, 334 N.E.2d 442, 447 (Ill. App. 1975) (junior college professors who "had become actively engaged in the controversy"); *Walko v. Kean College,* 561 A.2d 680, 686 (N.J. Super. 1988) (plaintiff had been "active in college life and her name was known to many in the college community" and had "submitted for publication in the student newspaper several pieces regarding her own activities"); *Gallman v. Carnes,* 497 S.W.2d 47, 50-51 (Ark 1973) (assistant dean and professor of a law school of a tax supported institution); *Rose v. Koch,* 154 N.W.2d 409, 426 (Minn. 1967) (state representative in the Minnesota legislature).

### b.    Trump University is not a public figure due to its association with Donald Trump

The *Gertz* court clearly provided the framework for defining who is an "all purpose" public figure for First Amendment purposes:  those who attain "general fame or notoriety in the community, and pervasive involvement in the affairs of society." *Gertz,* 418 U.S. at  352.  No controlling case law expands *Gertz* to allow the fame or notoriety of a public figure to be imputed to a small, private corporation simply because it bears a public figure's name or because the public figure endorses it.  Thus, under controlling authority, Trump University is not an "all purpose" public figure due solely to its association with Donald Trump.[5]

The district court correctly held that "although Donald Trump himself may be an 'all purpose' public figure, Makaeff points to no case supporting its argument that association with an 'all purpose' public figure *by itself* confers public figure status."  ER0010.  As Makaeff cannot overcome this impediment, she attempts to transmute Donald Trump's public figure status onto Trump University by arguing that when an individual, deemed a public figure in his own right, is "inextricably intertwined" with a corporation, such corporation should be given public figure status.  Makaeff Br. at 53.  Makaeff's authority for such a position, in

---

[5] Donald Trump is not an owner or a shareholder of Trump University.  SER6.  He is not a party to the counterclaim, nor was he a party to Makaeff's complaint at the time the counterclaim was filed.  ER0303-338.

-27-

addition to being non-binding law, in no way supports a finding that a public figure's marketing efforts on behalf of a small limited liability company can impute public figure status to the company.

First, in *Schiavone Const. Co. v. Time, Inc.,* 619 F.Supp. 684, 687 (D.N.J. 1985), *aff'd in part, and rev'd in part on other grounds,* 847 F.2d 1069 (3d Cir. 1988), Ronald Shiavone and Schiavone Construction Company sued Time, Inc. for defamation arising from Time's publication of an article linking Shiavone Construction Company to organized crime. *Id.* at 696. In analyzing whether the company and the individual were limited purpose public figures,[6] the Court recognized that *both* plaintiffs had voluntarily injected themselves into a public controversy by achieving public notoriety through their association with a public official who was at the center of the public controversy and through ties to criminal activity that received significant media attention.[7] Based on *both* the corporation's and its namesake's conduct in injecting them into, and seeking to influence resolution of a public controversy, plaintiffs' conduct rendered them "limited purpose" public figures. *Id.* at 704-05.

---

[6] Although Makaeff relies on *Shiavone* for the proposition that Trump University is an "all purpose" public figure due to its association with Donald Trump, such reliance is misplaces as the court did not analyze whether plaintiffs were "all purpose" public figures.

[7] The court recognized that this factor alone was enough to make plaintiffs limited purpose public figures. *See Rosanova v. Playboy Enterprises, Inc.,* 411 F.Supp. 440, 445 (S.D.Ga. 1976).

Makaeff cherry picks a footnote from the decision to argue that if a company bears the name of an individual deemed a public figure, the company shall also be deemed a public figure. Makaeff Br. at 53. The footnote she relies upon, however, does not stand for such a broad proposition. In the footnote, the Court merely explained that consistent with its prior holding that although the alleged defamatory statement did not specifically name Mr. Shiavone, the statement could be found to be "of and concerning" him individually because he and the corporation were so "inextricably intertwined" that reference to one could be interpreted as reference to the other. *Id.* at 705, n.13. Accordingly, because Mr. Shiavone and his company were perceived and acted as one and the same, for purposes of the court's analysis of public figure status, they would be treated the same. *Id.*

Unlike in *Shiavone,* Trump University has not done anything to inject itself into and seek to resolve, a public controversy. Thus, the logic of the *Shiavone* court, which is not binding on this Court in any case, is inapposite.

Second, Makaeff relies on an unpublished decision of a Kansas appellate court involving Hentzen Contractors, Inc., a corporation solely owned by Bud Hentzen, "a well-known Witchita individual and a member of the Sedgwick County Commission," and his wife, which was run by Hentzen's sons, and which operated under a contractor's license in Hentzen's name. *Hentzen Contractors,*

*Inc. v. Wichita*, 1991 Kan. App. LEXIS 510, at *1 (Kan. App. 1991).   Hentzen

Contractors, among other claims, sued city officials for defamation arising from

comments they made following city hearings regarding Hentzen Contractors

engaging in work without a permit.   *Id.* at *1-4.   In deeming Hentzen Contractors

a public figure, the court reasoned that Hentzen's actions in speaking on behalf of

the company in "the carefully orchestrated, public-relations directed television

interview" regarding the controversy drew the corporation into the status of public

figure.  *Id.* at *17-18.   It further reasoned, "The corporation is the applicant for the

building permit; and, Mr. Hentzen is the individual required to be qualified to

make the permit application.   In that sense he and the corporation are obviously

inseparable." *Id.* at *17.

In *Hentzen*, it was Bud Hentzen's actions on behalf of the company, in

injecting the company into the public controversy by calling press conferences and

participating in media interviews that made the company a public figure.   Further,

the controversy in *Hentzen* related to work done by the company operating under a

license held by Hentzen personally, thus tying the individual and the company

together in the controversy.   Unlike Hentzen, Donald Trump is neither the operator

of Trump University, nor a shareholder of Trump University, nor did he play a part

in the day-to-day operations of Trump University.   Nor is there evidence that

Donald Trump orchestrated any public relations campaign on behalf of Trump University in response to some controversy.

Further, unlike both *Shiavone* and *Hentzen,* there is no evidence that Donald Trump used his public figure status to draw Trump University into, and influence a public controversy. The best Makaeff can do is show that Donald Trump used his public figure status to market Trump University programs. Fatal to Makaeff's argument, no case law supports finding a corporation "shares" the public figure status of its celebrity spokesperson.[8]

Accordingly, Trump University is not an "all purpose" public figure.

---

[8] Similar to Makaeff's arguments in this regard, in its *Amicus Curiae* brief, the American Civil Liberties Union of San Diego & Imperial Counties (the "ACLU") advocates, without any authority, that "Consumers speaking out about products or services marketed by entities identified with public figures should be treated as if they were criticizing the public figures themselves." Brief *Amicus Curiae* of American Civil Liberties Union of San Diego & Imperial Counties ("ACLU Br.") at 15. The ACLU argues that simply because Martha Stewart's name is attached to a line of products and she has her own television programs, every entity for which she is connected automatically becomes a public figure. Extension of public figure status in such a scenario is not only unsupported by the law, but as shown by this example, demonstrates the slippery slope created by such an expansion, i.e. everything Martha Stewart, Donald Trump, or another public figure touched would automatically be a public figure and defamation defendants could avail themselves of the protection of the anti-SLAPP law, regardless of whether defendant actually met the public figure criteria of *Gertz*. This would clearly erode the intended meaning of public figure status as defined by *New York Times, Co.* and its progeny.

## 2. The District Court Correctly Held that Trump University Is Not A "Limited Purpose" Public Figure

In order for Trump University to be a "limited purpose" public figure, the following must be met: (1) "there must be a public controversy, which means the issue was debated publicly and had foreseeable and substantial ramifications for nonparticipants," (2) Trump University "must have undertaken some voluntary act through which [it]sought to influence resolution of the public issue" and (3) "the alleged defamation must be germane to the plaintiff's participation in the controversy." *Ampex Corp. v. Cargle*, 27 Cal. Rptr. 3d 863, 870 (Cal. App. 2005); *see also Gilbert v. Sykes,* 53 Cal. Rptr. 3d 752, 762 (Cal. App. 2007). Here, these factors cannot be met.

### a. Trump University was not involved in a public controversy

A true "controversy" that is "public" must exist at the time of the alleged defamatory statements. *Wolston v. Reader's Digest Ass'n,* 443 U.S. 157, 166 n. 8 (1979) (no public controversy regarding "the desirability of permitting Soviet espionage in the United States; all responsible United States citizens understandably were and are opposed to it"). For a controversy to exist, a "specific question" must be debated; a "general concern or interest will not suffice."

*Waldbaum v. Fairchild Publications, Inc.,* 627 F.2d 1287, 1297 (D.C.Cir. 1980),

*cert. denied* 449 U.S. 898 (1980)[9].

Makaeff cannot satisfy this basic but fundamental requirement, because Makaeff cannot identify the alleged "public controversy." She first argues the controversy is that "surrounding [Trump University's] purported educational program and methods." Makaeff Br. at 37. Then, she described it as those "concerning [Trump University's] founder, chairman, and namesake, his ventures into private for-profit education, and appropriate responses to the mortgage-foreclosure crisis." *Id.* at 42. Yet later, she argues that the public controversy is "those that surround Donald Trump and his ventures;" "those surrounding for-profit educational institutions;" "appropriate responses to the mortgage-foreclosure crisis;" those "swirling around the mortgage-foreclosure crisis" or "the growing controversy surrounding for-profit educational institutions." *Id.* at 55. At other times, Makaeff simply relies on vague assertions that Trump University "deliberately inserted itself in matters of public controversy" (*Id.* at 61) and has "voluntarily thrust itself into controversy" (*Id.* at 63). A private figure, however, does not become a public figure simply because it is "involved in or associated with a matter that attracts public attention." *Rancho La Costa, Inc. v. Superior*

---

[9] California courts have followed the *Waldbaum's* definition of a public controversy. *See Annette F. v. Sharon S.,* 15 Cal. Rptr. 3d 100, 112 (Cal. App. 2004).

*Court,* 165 Cal. Rptr. 347, 345 (Cal. App. 1980) (finding that plaintiff was not a public figure because the alleged "controversy" was merely an issue that invited limited press attention).

Makaeff's attempts to demonstrate that there existed a public controversy fails[10], as her cited general, perhaps public concerns, are not "specific questions," but rather are simply issues of "general concern or interest." *See Waldbaum,* 627 F.2d at 1297.

### b. Trump University did not inject itself into a public controversy to influence its outcome

Even if Makaeff can now conjure up a public controversy, the district court correctly held that "Trump University did not voluntarily inject itself into the controversy, or engage the public's attention in order to influence the resolution of the controversy." ER0010. The United States Supreme Court has made it clear that one who is dragged unwillingly into a controversy, and does not engage the press in discussions of the controversy cannot be deemed a public figure. *Wolston,* 443 U.S. at 167; *Time, Inc. v. Firestone,* 424 U.S. 448 (1976) (actions of a wife of a prominent citizen in filing for divorce and during divorce proceedings, where the

---

[10] Even if Makaeff characterized the public controversy as involving false advertising, such a topic does not meet the standard of a public controversy. *Carver,* 37 Cal. Rptr. 3d at 500.

proceedings attracted media publicity, were not "voluntary" so as to make her a public figure).

In *Hutchinson v. Proxmire,* 443 U.S. 111 (1979), a research scientist filed a libel lawsuit against a Senator who awarded him with a "Golden Fleece Award," in response to his receipt of federal funds for his research projects. In finding that the plaintiff was not a public figure, the Court recognized that even if the "concern about public expenditures" was a public controversy, plaintiff "at no time assumed any role of public prominence in the broad question of concern about expenditures" and "did not thrust himself or his views into the public controversy to influence others." *Id.*

By contrast, in *Gilbert,* a "prominent" professor and plastic surgeon was found to be a public figure in a defamation action against a former patient who published unfavorable statements about the surgeon on her website, because there existed a public controversy regarding the issue of "the relative merits of plastic surgery . . . a subject that has garnered national attention and is the focus of widespread public interest." 53 Cal. Rptr. 3d at 17-18. Plaintiff had voluntarily injected himself into the public controversy, "by appearing on local television shows as well as writing numerous articles in medical journals and beauty magazines touting the virtues of cosmetic and reconstructive surgery." *Id.* at 25.

-35-

As shown in *Gilbert,* it was the plaintiff's actions prior to the defamatory statements in which he sought to influence the controversy regarding plastic surgery by television appearances and written publications that evidenced that plaintiff has thrust himself into the controversy.  As the *Hutchinson* plaintiff did not engage in any similar conduct pre-defamation, but rather only became part of the controversy once the defamatory statements were made, he was not a public figure.  Similar to *Hutchinson* and unlike *Gilbert,* there is no evidence of any actions by Trump University showing that it thrust itself or its' views into any public debate.

Makaeff's reliance on media attention given to Trump University is a red herring, as Makaeff admits the attention received by Trump University occurred *after* she made her defamatory statements at issue.  Makaeff Br. at 61.  Efforts by a plaintiff after the defamation occurred to influence the outcome of a controversy are not probative of whether plaintiff is a public figure.  *Waldbaum,* 627 F.2d at 1295, n.19 (court must determine whether plaintiff was a public figure by evidence existing <u>before</u> the defamation was published).[11]  Further, it is well established that "those charged with defamation cannot, by their own conduct, create their own

---

[11] As explained in Trump University's Response to Makaeff's RJN, the articles she relies on are not proper material for judicial notice.  Additionally, such materials should not be considered by this Court because they are not probative of the issue at hand insofar as they were published after the defamatory statements were made by Makaeff.  The articles referenced by Makaeff are simply a further attempt to denigrate Trump University.

defense by making the claimant a public figure." *Hutchinson,* 443 U.S. at 135 (plaintiff was not "a public figure prior to the controversy engendered by the Golden Fleece Award; his access, such as it was, came after the alleged libel"); *Wolston,* 443 U.S. at 167-68; *Carver,* 37 Cal. Rptr. 3d at 500 ("Newspaper could not create a public controversy simply by publishing an article that put plaintiff's behavior in the spotlight.").

Makaeff points to no evidence existing at the time of her defamatory statements showing that Trump University had engaged the media to influence any particular controversy. Instead, Makaeff points to media attention received by Trump University, and likely initiated by her or her counsel, after she began her smear campaign. Makaeff's own attempts to draw Trump University into the controversy cannot be considered by this Court. Accordingly, as Trump University was not engaged in an alleged public controversy at the time of Makaeff's defamatory statements, it cannot be a public figure.

c.     **Makaeff's defamatory statements were not germane to Trump University's participation in a public controversy**

Makaeff also fails to demonstrate how her defamatory statements were related to Trump University's participation in the controversy. To the contrary, Makaeff admits that her defamatory statements were made in the context of seeking a reversal of charges from her bank. Makaeff Br. at 31. As Makaeff

cannot pinpoint the alleged "controversy," it is evident that her defamation was not germane to any public controversy for which Trump University was involved. For example, unlike *Gilbert*, where defendant's comments were made in a forum addressing the merits of plastic surgery, the controversy for which plaintiff was actively involved in seeking to influence, here Makaeff's does not argue that her statements were made in relation to some forum on the "mortgage foreclosure crisis" or regarding "Donald Trump and his ventures."

Accordingly, Trump University is not a "limited purpose" public figure.

### 3. The District Court Correctly Held That Trump University's Advertising Campaign Did Not Convert It Into A Public Figure

Controlling authority makes clear that a company does not become a public figure because it aggressively advertises its goods or services. *Vegod Corp. v. American Broadcasting Co.,* 25 Cal.3d 763, 769-70 (1979) ("a person in the business world advertising his wares does not necessarily become part of an existing public controversy. It follows those assuming the role of business practice critic do not acquire the First Amendment privilege to denigrate such entrepreneur.")

In *Rancho La Costa,* the California Court of Appeal explained that "the holding of *Vegod* sufficiently answers that advertising is not thrusting oneself into the vortex of a controversy. Similarly, the 'great access' to 'the media' is not the

same thing as having or seeking to have persuasive or pervasive influence on the outcome of controversial issues." 165 Cal. Rptr. at 356. The Court further held "no amount of publicity can involuntarily convert the private individual into a public figure. There must be 'evidence' or facts showing that plaintiff intentionally or voluntarily sought publicity or entered into a particular controversy to affect its outcome." *Id.* at 358; *see also Mattel, Inc. v. MCA Records, Inc.,* 28 F.2d 1120, 1162 (C.D. Cal. 1998), *aff'd* 269 F.3d 894 (9th Cir. 2002) (distinguishing MCA, an international conglomerate, from a small corporation and finding that MCA had thrust itself into the forefront of the controversy by engaging the media about the controversy).

Despite this controlling authority, Makaeff relies on out-of-jurisdiction cases, which do not apply California law, to argue that advertising alone can convert a business into a public figure. Even the cases Makaeff cites actually hold that extensive advertising alone does not garner public figures status. For example, in *American Future Sys., Inc. v. BBB,* 923 A.2d 389, 403 (Pa. 2007), the court explicitly held that advertising alone is not enough – there must be a nexus between the advertising and the public issue allegedly addressed by the defamatory statements. *See also Blue Ridge Bank v. Veribanc, Inc.,* 866 F.2d 681, 687 (4th Cir. 1989) (bank not a "limited purpose" public figure despite extensive

-39-

promotional campaign because bank's promotions were not centered on the public issue of the bank's financial health).

Rather, a company only becomes a public figure through advertising when such advertising creates the public controversy. For example, in *Steaks Unlimited v. Deaner,* 623 F.2d 264 (3d Cir. 1980), the company's advertising campaign, touting the quality and alleged discounted price of its beef ***created*** a public controversy regarding the sale of beef and through its advertising it sought to influence resolution of the controversy. Similarly, in *Sunshine Sportswear & Electronics, Inc. v. WSOC Televisions,* 738 F. Supp. 1499 (D.C.S. 1989), the public controversy at issue centered on plaintiff's advertising campaign – whether plaintiff was selling items at the prices it advertised.

In the lone case cite by Makaeff applying California law, *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 66 F.Supp.2d 1117, 1123 (C.D. Cal 1999), the court held that Isuzu was a public figure not because it advertised extensively, but because Isuzu had injected itself into the public controversy through its advertising efforts. Where Isuzu's advertising was aimed to address the public issue regarding vehicle rollovers and such advertising had a substantial effect on the market with respect to the issue, Isuzu had thrust itself into the public controversy. *Id.* at 1122-34.

Here, Trump University's advertising did not create or seek to influence resolution of a public controversy. While Makaeff argues that "Donald Trump and his University themselves created controversy that 'preceded the alleged defamation'" (Makaeff Br. at 59) Makaeff fails to explain, because she cannot, how Trump University's advertising created any of the vague controversies she alleges (even if they were public controversies, which they are not). Clearly, Trump University's ads did not create the controversy that "surround[s] Donald Trump and his ventures;" or the so-called controversy "surrounding for-profit educational institutions." Perhaps best illustrating this point is the fact that Makaeff cannot argue that Trump University created a controversy "surrounding the mortgage foreclosure crisis." Nor can she support her position that Trump University's advertisements somehow attempted to influence these alleged "controversies," as the advertisements simply publicized and promoted Trump University programs.[12] As shown in the extensive references by Makaeff, Trump University's advertisements are nothing more than promotions for the programs it offered.

Accordingly, Trump University is not a public figure.

---

[12] Makaeff's reference to a case involving a company that Trump University contracted with for the provision of independent contractors, *Hudgens v. Prosper, Inc.,* 243 P.3d 1275 (Utah 2010), fails to demonstrate Trump University's involvement in a public controversy as the actions of a company independent of Trump University are irrelevant.

### 4.     Trump University Has Shown Actual Malice

As demonstrated above, the district court correctly found that Trump University is not a public figure and need not prove actual malice. Even if the district court erred, and Trump University is found to be a public figure, this Court should affirm the district court's ruling because there is no prejudice because Trump University demonstrated that Makaeff acted with malice.

Malice is shown when a person publishes a false statement, either (1) knowing the statement was false or (2) with reckless disregard for whether the statement is true or not. *Sipple v. Foundations for Nat. Progress,* 83 Cal. Rptr. 2d 677, 690 (Cal. App. 1999). Malice can be proven by direct or circumstantial evidence. *Reader's Digest Assn. v. Superior Ct.,* 690 P.2d 610, 618 (Cal. 1984); *Annette F.,* 15 Cal. Rptr. 3d at 115. In determining whether the speaker acted with reckless disregard, the Court must consider evidence of the speaker's anger or hostility to the target of the defamation, the speaker's investigations into the truth of the matters stated, reliance upon unreliable sources, and any subsequent conduct by the speaker. *Reader's Digest Assn.,* 690 P.2d at 618-19.

Makaeff's conduct and the circumstances surrounding the making of her defamatory statements demonstrate that the malice standard is met. In April 2009, Makaeff emailed Trump University requesting a refund by explaining that she "did not receive the value that I thought I would for such a large expenditure," and "was

under the impression that my mentors would cover more of the contracts and numbers" and "I went ahead and purchased another $10,000 package from Trump Institute . . . because I really wanted to get the knowledge I didn't the first time around." ER0211. Conspicuously missing from the email is any suggestion – let alone accusation – of any criminal conduct or behavior. It wasn't until after she was denied a refund that she engaged in making false allegations of criminal conduct.

Further, for ten months Makaeff praised Trump University in every single writing, evaluation, and testimonial she gave. ER0213-14. It was not until she fell into financial crisis, admittedly unrelated to Trump University[13], and Trump University's refusal to refund her money (after she enjoyed all of the benefits of seven programs over a ten-month period) that she reversed course and alleged criminal conduct by Trump University.

Makaeff's defamatory allegations, directly related to her own financial woes, make it obvious that such allegations were not rooted in a good faith belief in their veracity but rather on her own financial struggles. Makaeff admits that her state of mind at the time of making the statements was one of a "distraught consumer." Makaeff Br. at 7, 10. Makaeff seemingly admits that such statements were not

---

[13] In Makaeff's email to Trump University dated April 13, 2009, requesting a refund, she states that she "has earned 6 figures in the past but lost marketing business when my client restructured due to the economy . . . I seriously need the money. I am under an insane amount of stress." ER0211.

made out of any belief in the truth of the allegations, but rather based on her anger and desperate attempts to obtain a refund of her money.

Makaeff also fails to show that she had any personal knowledge of any criminal activity by Trump University against other attendees and does not claim criminal conduct based on anything that happened to her. Noticeably absent from her letters are any allegations of actions by Trump University that it opened and charged her credit card without permission, that Trump University stole her identity, or that Trump University used brainwashing tactics on her. Makaeff 's only basis for such allegations is that she read some anonymous postings on the internet, then adopted those claims as if they were her own, and then broadcast them to her bank and the BBB. *See* ERC0274-78. She at least implicitly admits by her silence on the issue, however, that prior to her publication, she conducted no investigation and had no personal knowledge as to their veracity. California courts have consistently found that such conduct constitutes malice. *Nguyen-Lam v. CAO,* 90 Cal. Rptr. 3d 205, 869 (Cal. App. 2009) ("malice may be inferred where . . . a story is based solely on an unverified anonymous telephone call."); *Christian Research Institute v. Alnor,* 55 Cal. Rptr. 3d 600, 612 (Cal. App. 2007) (same). Makaeff's attempts to avoid a finding that she acted with malice by simply professing good faith is not enough, *St. Amat v. Thompson,* 390 U.S. 727, 732 (1968), as such statements were completely contradictory to her own experiences.

-44-

Thus, when making the defamatory statements, Makaeff knew they could not be true.

Thus, there is ample evidence that Makaeff acted with malice.

**C.** **The District Court Correctly Held that Makaeff's Statements are Actionable Statements of Fact**

As explained by the district court, "'Under California law, recovery for defamation may be had only for false statements of fact. Statements of opinion are not actionable.'" ER0011 (citing *Info. Control Corp. v. Genesis One Computer Corp.,* 611 F.2d 781, 783 (9th Cir. 1980)). A defendant cannot hide behind a claim of "opinion" however, when the statement in question – however phrased – states a provable (or disprovable) fact. *Milkovich v. Lorain Journal Co.,* 487 U.S. 1, 19 (1990); *Rodriguez v. Panayiotou,* 314 F.3d 979, 985 (9th Cir. 2002). Thus, "a false assertion of fact [can] be libelous even though couched in terms of opinion." *Moyer v. Amador Valley Joint Union High School Dist.,* 275 Cal. Rptr. 494, 496 (Cal. App. 1990). "If the court concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury." *Campanelli v. Regents of the Univ. of Cal.,* 51 Cal. Rptr. 2d 891, 895 (Cal. App. 1996); *see also Kahn v. Bower,* 284 Cal. Rptr. 244, 250 (Cal. App. 1991) ("court must first determine as a question of law whether the statement is reasonably susceptible of a defamatory interpretation; if the statement satisfies this

-45-

requirement, it is for the jury to determine whether a defamatory meaning was in fact conveyed to the listener or reader").

The distinction between statements of fact and opinion was explained in *Manufactured Home Communities v. County of San Diego,* 544 F.3d 959, 963 (9th Cir. 2008), where a county supervisor made statements that plaintiff "lied" about a sewage situation, plaintiff had a "reputation for driving out elderly residents," and that the incoming district attorney was "very interested" in determining whether to pursue civil or criminal liability for plaintiff's actions. *Id.* at 962. The court held that such statements were actionable because "it does not seem unreasonable to imagine . . . that a juror could conclude" that defendant made such statements "as a matter of fact." *Id.* at 964.

Among other defamatory statements, Makaeff stated that Trump University engaged in: (1) a "clear practice of personal financial information fraud"; (2) "grand larceny"; (3) "identity theft"; (4) "unsolicited taking of personal credit and trickery into [sic] opening credit cards without approval"; and (5) "blatant lies" when it represented that it provided mentoring and coaching. ER0220-27. The district court correctly held that "these statements are actionable statements of fact" because they "are at least reasonably susceptible of an interpretation which implies a statement of fact" and therefore, "[i]t cannot be said as a matter of law that no reasonable person could construe them as provably false." ER0011-12. Further,

-46-

Trump University can prove, through uncontroverted evidence, that: it has never been charged with, much less convicted of, any crime; it does not obtain credit card information from its attendees illegally or from third parties; and it has never stolen the identity of its attendees nor committed identity theft. ER0216.

Makaeff's attempts to characterize her statements as "rhetorical expressions of opinion" fail. Makaeff Br. at 67. First, the cases cited by Makaeff for purposes of arguing that her statements are non-actionable opinions are misplaced as they contain prefatory language making the statements insusceptible to interpretation as fact. For example, alleged factual statements were prefaced with "[i]n the opinion of [defendant's] management," *Info. Control Corp.,* 611 F.2d at 783, "[m]y impression is" *Baker v. Los Angeles Herald Examiner,* 721 P.2d 87, 92 (Cal. 1986), and a clarification that the person making the statement "felt" a certain way, *Campanelli,* 64 Cal. Rptr. 3d at 895.

Second, Makaeff's statements were not published "in a public debate, a heated labor dispute, or another setting in which the audience may anticipate efforts by the parties to persuade others to their position by use of epithets, fiery rhetoric or hyperbole." *Gregory v. McDonnell Douglas Corp.,* 552 P.2d 425, 428 (Cal. 1976). In *Gregory,* for example, statements during a labor dispute that union officials were "apparently willing to sacrifice the interests of members of their own union to further their own political aspirations and personal ambitions" were not

factual statements because in the context of a heated labor dispute, with prefatory phases of "apparently" used throughout, such charges were held not "calculated to induce the audience, to whom they are addressed, to conclude or understand that they are factual." *Id.* at 429.

Similarly, in *Greenbelt Coop. Publ'g Ass'n v. Bresler,* 398 U.S. 6, 14 (1970)*,* newspaper's report of statements of "blackmail" made during city council meeting in reference to a proposal could not be understood to mean anything other than that plaintiff's negotiating proposals were subject to harsh criticism by members of the public. *See also Underwager v. Channel 9 Australia,* 69 F.3d 361, 367 (9th Cir. 1995) (defendant's response of "yes" to whether he thought plaintiff was "lying" was too vague in the context of the interview in which it was uttered to be found to "impl[y] a verifiable assertion of perjury.")

Unlike the reporting of others characterizing plaintiff's actions of "blackmail" used only to criticize plaintiff's negotiating practices and not reasonably susceptible to being interpreted as charging one with the crime of "blackmail" (*Greenbelt,* 398 U.S. at 14), or a statement that plaintiff "lied" being interpreted as accusing plaintiff of perjury (*Underwager,* 69 F.3d at 367), evaluated in the context in which her statements were made, a reasonable fact finder could conclude, based on Makaeff's statements, that Trump University engaged in crimes and improper business practices. *See Milkovich,* 497 U.S. at 21

(statements in newspaper article that plaintiff lied under oath were not made with "the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that petitioner committed the crime of perjury" thus, a reasonable fact finder could conclude that such statements implied that petitioner perjured himself).

Makaeff's statements do not contain prefatory language reflecting that she was expressing an opinion and were not made in a heated debate. Instead Makaeff made her statements as fact, and gave extensive details of her position in an attempt to bolster it so that she could obtain a refund. Where the defamatory statements are accompanied by attempts to provide substantiation for the statements, such statements clearly are not made in the context where one would expect hyperbole. *See, e.g. Melaleuca, Inc. v. Clark,* 78 Cal. Rptr. 2d 627, 633 (Cal. App. 1999) (statements "set forth in a lengthy book which, by extensive reference to case studies, attempts to provide proof of [the author's] conclusions" were "not asserted in the context of a dispute or intellectual inquiry in which the audience might expect hyperbole, exaggeration or speculation").

In her letters, Makaeff repeatedly sought to convince the readers that what she alleged was "fact." For example, she used the preface, "I know for a fact" when accusing Trump University of lying (ER0225), stated "[t]he fact is" and "[i]n fact" (ER0226), and stated in reference to comments made by a Trump University

-49-

representative that "I know for a fact [the statement is] a blatant lie" (ER0229). She also sought to convince Bank of America that her statements were facts by explaining that HSBC ceased business ties with Trump University because of "substantiated proof of Fraudulent sales practices."  ER0223.

Makaeff also cannot avoid the consequences of her defamatory statements by claiming ignorance because "she is not trained in the law." Makaeff Br. at 70. As explained by the *Gregory* court, the "legal effect of attacks on motives must be carefully distinguished, however, from accusations that an individual has committed a crime or is personally dishonest.  No First Amendment protection, of course, enfolds the latter charges."  552 P.2d at 430; *see also Rodriguez,* 314 F.3d at 987 (factual assertions the plaintiff performed lewd acts in public during television and magazine interviews were factual assertions).

Therefore, Makaeff's contention that her statements were mere opinion are without merit.

### D.    The District Court Correctly Held That Trump University Need Not Show Actual Damages

The district court properly held, and Makaeff does not here dispute, that Makaeff's statements are libelous per se as such "statements by their very nature would likely have the tendency to injure and cause special damage." ER0012.

Because Makaeff's statements are libelous per se, the district court correctly held that Trump University need not prove special damages. ER0012.

When a written statement is defamatory on its face, it is defamation per se and actionable without proof of special damages. Cal. Civ. Code §45(a) ("A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof."); *Yow v. National Enquirer, Inc.,* 550 F.Supp.2d 1179 (E.D. Cal. 2008)*; Barnes-Hind, Inc. v. Superior Court,* 226 Cal. Rptr. 354, 356 (Cal. App. 1986) ("If [plaintiff] can plead and prove libel per se it need not prove special damages).

False accusations of a crime are considered defamation per se. *Weinberg v. Feisel,* 2 Cal. Rptr. 3d 385, 395 (Cal. App. 2003). In addition to allegations of a commission of a crime, "almost any language which, upon its face, has a natural tendency to injure a person's reputation, either generally, or with respect to his occupation" is considered defamation per se. *Bates v. Campbell,* 2 P.2d 383, 441 (1931). There is "no distinction between the protectable interests in reputation of corporations and individuals." *Vegod,* 25 Cal.3d at 770.

Despite the clear statutory rule, Makaeff argues that the Supreme Court's decision in *Gertz* requires Trump University to nevertheless prove actual damages. Makaeff Br. at 71.  Makaeff's authority for this position, however, is not as expansive as she leads this Court to believe.  As explained by the Supreme Court in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 761, n.7 (1985), the *Gertz* decision did not eliminate the ability of the states to make "presumed and punitive damages available under some circumstances."  Instead, it explained that in situations not involving "matters of public concern," such as the issuance of a false credit report to plaintiff's creditors, presumed damages may be recovered absent a showing of actual malice.  *Id.* at 760.

Here, as demonstrated by Trump University in Section VII.B.4 above, it has shown malice.  Further, Makaeff has failed to show that her attempts to obtain a refund from her bank or through correspondence to the BBB are matters of public concerns.[14]  Instead, like the credit reports in *Dun & Bradstreet, Inc.,* Makaeff's defamatory statements were made as part of private correspondence.  Accordingly,

---

[14] Makaeff's only argument for this point is that the district court held that Makaeff's communications related to a matter of public interest.  Makaeff Br. at 72 (citing ER0007-8).  This argument is unpersuasive as the district court did not make any findings as to whether the defamation dealt with a "matter of public concern" in the context of requiring a party to prove damages.  Furthermore, as shown by Trump University in Section VII.A., the district court erred in such finding.

as the statements in question here are indisputably defamatory per se, the district court correctly held that Trump University need not show actual damages.

Finally, even if Trump University were required to show actual damages, it has met its burden. As set forth by Michael Sexton, President of Trump University since its inception, beginning in Fall 2009, Trump University incurred actual damage in the form of money spent to respond to Makaeff's allegations of criminal conduct. ER0212, ER0217. Makaeff's attempts to convince the Court to disregard the evidence presented by Mr. Sexton by arguing that it is inadmissible is unpersuasive, as his testimony regarding the actual damages was based on proper foundation: he has been the President of Trump University since the company began in about 2004 and he is familiar with the business practices and procedures of Trump University, including the day-to-day operations, and financial condition of the company. ER0212-13. Nor does Makaeff show how Mr. Sexton's testimony is in any way "argumentative, speculative, impermissible opinion, hearsay, or conclusory." *Albergo v. Immunosyn Corp.,* No. 09cv2653 DMS(AJB), 2011 U.S. Dist. LEXIS 5455, at *11 (S.D. Cal. Jan. 20, 2011) (quoting *Gilbert,* 53 Cal. Rptr. at 752). Accordingly, this evidence is sufficient to carry Trump University's burden of showing evidence of the fact of actual damages.

### E.     The District Court Correctly Held that Makaeff's Statements Are Not Privileged Communications

California Civil Code section 47(b) provides a "litigation privilege" that bars liability for any communication:  "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson,* 786 P.2d 365, 369 (Cal. 1990).  The purpose of the privilege is "to encourage parties to feel free to exercise their fundamental right of resort to the courts for assistance in the resolution of their disputes, without being chilled from exercising this right by fear that they may subsequently be sued in a derivative tort action arising out of something said or done in the context of the litigation. *Edwards v. Centex Real Estate Corp.,* 61 Cal. Rptr. 2d 518, 526-27 (Cal. App. 1997).

### 1.     Makaeff's Statements Were Not Made in a Judicial or Quasi-Judicial Proceeding

Although section 47(b) does not expressly include pre-litigation communications, "courts have applied the judicial privilege to certain discreet categories of communications made in advance of litigation." *Id.* at 527.  The privilege attaches to pre-litigation communications only "at the point in time that imminent access to the courts is seriously proposed by a party in good faith for the

purpose of resolving a dispute, and not when *a threat of litigation is made merely as a means of obtaining a settlement.*"  *Id.* at 531 (emphasis added).

Makaeff argues that the defamatory statements she made well before she instituted litigation in letters to her bank and the BBB should be protected by this privilege.  Makaeff Br. at 63.  The district court correctly ruled that the privilege did not apply to Makaeff's statements because Makaeff failed to present evidence that the litigation was "'more than a mere possibility, but had instead ripened into a *proposed proceeding.*'" ER0014 (quoting *Edwards,* 61 Cal. Rptr. 2d at 39).  Instead, the evidence reflected that "litigation was only a possibility at the time, because Makaeff was attempting to obtain a refund in order to avoid litigation." ER0014.

Looking at the communications containing the defamatory statements, it is clear that Makaeff's communications were nothing more than "a means of inducing settlement of a claim, and not in good faith contemplation of a lawsuit." *Edwards,* 61 Cal. Rptr. 2d at 35, n.10.  Makaeff's statement to her bank that "I will go to whatever lengths necessary to obtain my money back including taking legal action" (ER0223), the mere mention that she had "discussions with counsel" which led her to believe that she had a "legal cause of action" (ER0227), and mentioning that she had "discussed" the "interest of students in wanting to pursue as significant legal action as class action lawsuits" (ER0226) on their face are nothing

-55-

more than a "negotiating tactic and not a serious proposal made in good faith contemplation of going to court." *Id.* at 35. Perhaps most telling, in making the defamatory statements to the BBB, Makaeff makes no mention whatsoever of a proposed proceeding, but instead admits that her statements are made to obtain a refund. ER0239-45.

The authority cited by Makaeff, contrary to her own communications, involved communications that crossed the threshold of litigation being a mere possibility to communications reflecting that litigation was seriously contemplated. For example, in *Rubin v. Green,* 847 P.2d 1044, 1045 (Cal. 1993), the statements in question were made by attorneys soliciting individuals for purposes of commencing litigation. In *Blanchard v. DIRECTV, Inc.,* 20 Cal. Rptr. 3d 385, 388 (Cal. App. 2004) and *American Prods., Inc. v. Law Offices of Geller, Stewart & Foley, LLP,* 37 Cal. Rptr. 3d 93, 96 (Cal. App. 2005) the statements were made in pre-litigation demand letters. *Sengchanthalangsy v. Accelerated Recovery Specialists, Inc.,* 473 F.Supp.2d 1083, 1089 (S.D. Cal. 2007), involved an affidavit submitted after initiation of the lawsuit, in response to plaintiff's request, and for purposes of settlement of the litigation.

Perhaps recognizing that her pre-litigation communications insufficiently evidence that litigation was but a mere possibility, Makaeff tries to re-characterize her actions as efforts to resolve her dispute through arbitration or mediation.

Makaeff Br. at 65. The cases she relies on for this proposition are clearly

inapposite as they involved statements made during formal arbitrations or

mediations, in settings akin to that of a formal judicial proceeding. *See Moore v.*

*Conliffe,* 871 P.2d 204, 209 (Cal. 1994) (privilege applied to testimony in the

course of an arbitration proceeding because "such a proceeding is designed to

serve a function analogous to-and typically to eliminate the need to resort to-the

court system."); *Komarova v. Nat'l Credit Acceptance,* 95 Cal. Rptr. 3d 880, 894

(Cal. App. 2009) (communications made in relation to arbitration proceeding);

*Howard v. Drapkin,* 222 Cal. Rptr. 893 (Cal. App. 1990) (privilege barred action

by a psychologist who was engaged by stipulation of the parties to a family law

proceeding to evaluate the matter.) [15]

Statements made during arbitration and mediation are far different than the

communications at issue here – communications to Makaeff's bank and the BBB.

Even by the farthest stretch of the imagination, such communications cannot be

characterized as those made during arbitration or mediation.

---

[15] Makaeff's reliance on *Hagberg v. Cal. Fed. Bank FSB,* 81 P.3d 244, 255 (Cal. 2004) for this proposition is misplaced as the case did not involve an arbitration or mediation. Instead, the court held that the litigation privilege applied to statements to law enforcement "intended to instigate official governmental investigation into the wrongdoing." Clearly, Makaeff's statements here were not part of a criminal investigation.

## 2.      The Defamatory Statements Have No Connection or Logical Relation to the Action

Makaeff has no explanation of how her communications, made to non-parties to this litigation could possibly have a connection, or logical relation, to the litigation.  In order for the communication to have a connection, or logical relation, to the litigation, it must "function as a necessary or useful step in the litigation process" which is a "very different thing from saying that the communication's *content* need only be related in some way to the subject matter of the litigation." *Rothman v. Jackson,* 57 Cal. Rptr. 2d 284, 292 (Cal. App. 1996).  The logical relation test "cannot be satisfied by communications which only serve interests that happen to parallel or complement a party's interests in the litigation."  *Id.* at 293.

The district court correctly held that "Makaeff's statements do not have the requisite 'connection or logical relation' to her subsequent lawsuit against Trump University."  ER0014.  Pre-litigation communications found to demonstrate the "connection or logical relation" include:  demand letters or similar communications between litigants or their attorneys regarding settlement of a pending or anticipated lawsuit, (*see, e.g. Passman v. Torkan,* 40 Cal. Rptr. 2d 291 (Cal. App. 1995)*; Costa v. Superior Court,* 204 Cal. Rptr. 1 (Cal. App. 1984)); and communications by a law firm to potential clients seeking support for the filing of

a lawsuit (*see, e.g., Dove Audio, Inc. v. Rosenfield, Meyer & Susman,* 54 Cal. Rptr. 2d 830 (Cal. App. 1996)).

Unlike the above situations where the privilege was properly applied, Makaeff's statements are communications to third-parties having nothing to do with a potential lawsuit.  It is well-settled that statements made to non-participants to the lawsuit are not privileged under section 47(b).  *Silberg,* 786 P.2d at 373-74; *see also, Rothman,* 57 Cal. Rptr. 2d at 294 (communications at issue did not fall within the privilege because such statements were made to non-participants in the lawsuit); *Susan A. v. County of Sonoma,* 3 Cal. Rptr. 2d 27, 31(Cal. App. 1991) (statements made by psychologist to the press about minor accused of attempted murder not privileged).

As statements made to third parties, it is clear that Makaeff's communications do not "function as a necessary or useful step in the litigation process."  *Rothman*, 57 Cal. Rptr. 2d at 293.   At best, Makaeff's communications merely mirror allegations she made in her lawsuit.   Simply publicizing one's allegations which also serve as part of one's claim to non-participant's in the litigation does not deem such statements as having "some connection or logical relation" to the action.  *Id.* (the test is not met simply because a communication's *content* is related in some way to the subject matter of the litigation.)  The logical

-59-

relation test "cannot be satisfied by communications which only serve interests that happen to parallel or complement a party's interests in the litigation." *Id.*

Misconstruing the logical relation test, and ignoring the fact that her defamatory communications were made to non-participants in the litigation, Makaeff argues that pre-litigation communications with "some relation" to a contemplated proceeding are protected. Makaeff's statements to her bank and the BBB are in no way similar, however, to the cases she cites for this proposition. Unlike *Block v. Sacramento Clinical Labs Inc.,* 182 Cal. Rptr. 438, 442 (Cal. App. 1982), her statements were not made in the furtherance of a request by a district attorney as part of a litigation. Nor were they made in the course of a litigation by an attorney in order to induce a settlement with an insurance company (*Rosenthal v. Irell & Manella,* 185 Cal. Rptr. 92, 95 (Cal. App. 1982), or made during an interview with an attorney in preparation for a legal proceeding (*Ascherman v. Natanson,* 100 Cal. Rptr. 656, 659 (Cal. App. 1972), or levying property post-judgment. *Rusheen v. Cohen,* 128 P.3d 713, 718 (Cal. 2006). Clearly they were not statements made to a party threatening an eviction action and carrying through by posting a notice to quit and filing an unlawful detainer action. *Feldman v. 1100 Park Lane Assocs.,* 74 Cal. Rptr. 3d 1, 23 (Cal. App. 2008).

Furthermore, Makaeff's reliance on *Sacramento Brewing Co. v. Desmond, Miller & Desmond,* 89 Cal. Rptr. 2d 760, 762 (Cal. App. 1999) for the proposition

that the privilege "'should be denied only where [the communication] is so palpably irrelevant to the subject matter of the action that no reasonable person can doubt its irrelevancy," is misleading, as such a finding was made in the context of **in court** communications.   In *Sacramento Brewing Co.,* the court was charged with the question of whether the litigation privilege should apply to the misidentification of a party in a bankruptcy proceeding.  *Id.*  In deciding this question, the court focused on whether the communication, the naming of the wrong party, had some connection or logical relation to the action.  *Id.* at 766.  As the filing was made during the bankruptcy proceeding, for purposes of the proceeding itself, the court held that the privilege applied.  *Id.*

As Makaeff's pre-litigation communications are not "logically related" to the litigation she cannot avail herself of the privilege.

### 3.    The Purpose of the Statute Would Not be Advanced by Extending the Privilege to Protect Makaeff's Communications

As explained by the district court, "The purpose of this privilege is to afford litigants and witnesses 'the utmost freedom of access to the courts without fear of being harassed subsequently by derivative court actions.'" ER0014 (citing *Edwards,* 61 Cal. Rptr. 2d at 526).  It was created to "ensure free access to the courts, promote complete and truthful testimony, encourage zealous advocacy, give finality to judgments, and avoid unending litigation."  ER0015.  The *Edwards*

court warned that extending the privilege to pre-litigation communications where there was only the possibility that litigation would be filed, "would effectively permit a person or corporation to lie or make fraudulent miscommunications any time a claim is made, on the theory that the claim *might* ripen into an actual lawsuit. Such an extension of the privilege would swallow up much of the law of torts." 61 Cal. Rptr. 2d at 529. Such an expansive application, rejected by the *Edwards* court, is what Makaeff seeks here.

As the district court correctly found, applying the litigation privilege to the case at hand would not further any of the policies for which the statute was intended. ER0015. Therefore, Makaeff's argument that her defamatory statements are protected by the litigation privilege fails.

## VIII.

## CONCLUSION

For all the reasons set forth above, this Court should affirm the district court's denial of Makaeff's anti-SLAPP motion.

DATED:  AUGUST 15, 2011          Respectfully submitted,

                                 s/ JILL A. MARTIN_____
                                 JILL A. MARTIN
                                 Attorney for Defendant-Counter-Claimant-
                                 Appellee Trump University, LLC

-62-

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(B)(i) because this brief contains 13,948 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).


Dated:  AUGUST 15, 2011                    Respectfully submitted,


                                    By:  s/ JILL A. MARTIN
                                          JILL A. MARTIN

                                    Attorney for Defendant-Counter-Claimant-
                                    Appellee Trump University, LLC

## **<u>STATEMENT OF RELATED CASES</u>**

There are no related cases pending in this Court.

## **CERTIFICATE OF SERVICE**

Case No. 11-55016

I hereby certify that on August 15, 2011, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


s/   Stephen Moore