No. 11-55016

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

TARLA MAKAEFF, Individually and on Behalf of All Others Similarly Situated,

Plaintiff-Counter-Defendant-Appellant,

vs.

TRUMP UNIVERSITY, LLC,

Defendant-Counter-Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of California
No. 3:10-cv-00940-IEG(WVG)
The Honorable Irma E. Gonzalez

PLAINTIFF-COUNTER-DEFENDANT-APPELLANT'S REPLY BRIEF

ROBBINS GELLER RUDMAN
  & DOWD LLP
ERIC ALAN ISAACSON (120584)
RACHEL L. JENSEN (211456)
THOMAS R. MERRICK (177987)
AMANDA M. FRAME (253603)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ZELDES & HAEGGQUIST, LLP
AMBER L. ECK (177882)
625 Broadway, Suite 906
San Diego, CA  92101
Telephone:  619/342-8000
619/342-7878 (fax)

Attorneys for Plaintiff-Counter-Defendant-Appellant

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................1

II.     ARGUMENT ................................................................................................3

     A.     Makaeff's Communications Are Protected Speech and
        Advocacy .........................................................................................3

     B.     Donald Trump's "University" Either Shares His Status as a
        Public Figure, or Is At Least a Limited-Purpose Public Figure............8

     C.     Trump University Provides No Clear-and-Convincing Proof of
        Actual Malice ...................................................................................17

     D.     Trump University Fails to Show that Warmly Hyperbolic
        "Defamatory Rhetoric" Was Other than Impassioned Opinion..........25

     E.     Trump University Has Not Demonstrated that It Suffered
        Actual Injury....................................................................................26

     F.     Makaeff's Communications Are Protected Statements Made in
        Connection with Anticipated Litigation.............................................29

     G.     This Court May Judicially Notice Continuing Public Interest...........31

III.    CONCLUSION..............................................................................................34

653391_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Addington v. Texas*,
    441 U.S. 418 (1979)...................................................................19

*Am. Future Sys., Inc. v. BBB*,
    923 A.2d 389 (Pa. 2007)...........................................................13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................19, 20

*Barrett v. Rosenthal*,
    146 P.3d 510 (Cal. 2006).............................................................8

*Bartimo v. Horsemen's Benevolent & Protective Ass'n*,
    771 F.2d 894 (5th Cir. 1985) ....................................................19

*Beckley Newspapers Corp. v. Hanks*,
    389 U.S. 81 (1967).....................................................................20

*Blanchard v. DIRECTV, Inc.*,
    20 Cal. Rptr. 3d 385 (Cal. App. 2004)........................................7

*Bose Corp. v. Consumers Union*,
    466 U.S. 485 (1984)...................................................................19

*Briggs v. Eden Council for Hope & Opportunity*,
    969 P.2d 564 (Cal. 1999).............................................................7

*Brown v. Memphis Publ'g Co.*,
    538 F.2d 699 (5th Cir. 1976) ....................................................27

*Brown & Kelly Broad. Co.*,
    771 P.2d 406, 428-29 (Cal. 1989)..............................................28

*Brueggemeyer v. Am. Broad. Cos.*,
    684 F. Supp. 452 (N.D. Tex. 1988) ...........................................13

**Page**

*Carver v. Bonds*,
   37 Cal. Rptr. 3d 480 (Cal. App. 2005)...................................................................4

*Christian Research Inst. v. Alnor*,
   55 Cal. Rptr. 3d 600 (Cal. App. 2007)...........................................................18, 19

*Citizens United v. FEC*,
   __ U.S. __, 130 S. Ct. 876 (2010)......................................................................10

*Congoleum Corp. v. DLW Aktiengesellschaft*,
   729 F.2d 1240 (9th Cir. 1984) ............................................................................15

*Conroy v. Spitzer*,
   83 Cal. Rptr. 2d 443 (Cal. App. 1999)................................................................18

*Curtis Publ'g Co. v. Butts*,
   388 U.S. 130 (1967)............................................................................................13

*Data Disc, Inc. v. Sys. Tech. Assocs.*,
   557 F.2d 1280 (9th Cir. 1977) ............................................................................15

*Dockray v. Phelps Dodge Corp.*,
   801 F.2d 1149 (9th Cir. 1986)............................................................................34

*Dove Audio v. Rosenfeld, Meyer & Susman*,
   54 Cal. Rptr. 2d 830 (Cal. App. 1996)..................................................................7

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
   472 U.S. 749 (1985)......................................................................................27, 28

*Evans v. Unkow*,
   45 Cal. Rptr. 2d 624 (Cal. App. 1995)................................................................17

*Fashion 21 v. Coalition for Human Immigrant Rights of Los Angeles*,
   12 Cal. Rptr. 3d 493 (Cal. App. 2004)................................................................17

*Feldman v. 1100 Park Lane Assocs.*,
   74 Cal. Rptr. 3d 1 (Cal. App. 2008)....................................................................31

653391_1

**Page**

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) .................................................................... *passim*

*Gregory v. McDonnell Douglas, Corp.*,
  552 P.2d 425 (Cal. 1976) ................................................................. 25

*Gugliotta v. Moreno*,
  829 N.E.2d 757 (Ohio App. 2005) ..................................................... 5

*Hall v. Time Warner, Inc.*,
  63 Cal. Rptr. 3d 798 (Cal. App. 2007) .............................................. 17

*Hustler Magazine v. Falwell*,
  485 U.S. 46 (1988) ......................................................................... 10

*Hutchinson v. Proxmire*,
  443 U.S. 111 (1979) ........................................................................ 16

*Izusu Motors Ltd. v. Consumers Union of the United States, Inc.*,
  66 F. Supp. 2d 1117 (C.D. Cal. 1999) .............................................. 13

*Kahn v. Bower*,
  284 Cal. Rptr. 244 (Cal. App. 1991) ................................................ 25

*Manufactured Home Cmtys., Inc. v. County of San Diego*,
  544 F.3d 959 (9th Cir. 2008) ..................................................... 25, 26

*Manufactured Home Cmtys., Inc. v. County of San Diego*,
  No. 09-55586, __ F.3d __, 2011 U.S. App. LEXIS 17839
  (9th Cir. Aug. 26, 2011) ..................................................... 17, 18, 26

*Marcone v. Penthouse Int'l Magazine for Men*,
  754 F.2d 1072 (3d Cir. 1985) .......................................................... 20

*Masson v. New Yorker Magazine*,
  501 U.S. 496 (1991) .............................................................. 13, 14, 18

653391_1

**Page**

*Matson v. Dvorak*,
  46 Cal. Rptr. 880 (Cal. App. 1995)....................................................17

*Mattel, Inc. v. MCA Records, Inc.*,
  28 F. Supp. 2d 1120 (C.D. Cal. 1998), *aff'd*, 269 F.3d 894
  (9th Cir. 2002).............................................................................13

*McCoy v. Hearst Corp.*,
  727 P.2d 711 (Cal. 1986) ..............................................................19

*McGarry v. Univ. of San Diego*,
  64 Cal. Rptr. 3d 467 (Cal. App. 2007)...........................................18

*McKinley v. Baden*,
  777 F.2d 1017 (5th Cir. 1985) .......................................................19

*McNair v. Worldwide Church of God*,
  242 Cal. Rptr. 823 (Cal. App. 1987)..............................................28

*Melaleuca, Inc. v. Clark*,
  78 Cal. Rptr. 2d 627 (Cal. App. 1998).....................................18, 28

*Moses v. County of Kenosha*,
  826 F.2d 708 (7th Cir. 1987) .........................................................15

*Moyer v. Amador Valley J. Union High School Dist.*,
  275 Cal. Rptr. 494 (Cal. App. 1990)..............................................26

*Mr. Chow of New York v. Ste. Jour Azul, S.A.*,
  759 F.2d 219 (2d Cir. 1985) ..........................................................19

*Navellier v. Sletten*,
  52 P.3d 703 (Cal. 2002)..................................................................17

*Neville v. Chudacoff*,
  73 Cal. Rptr. 3d 383 (Cal. App. 2008)..............................................7

653391_1

**Page**

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964).................................................................. *passim*

*Newton v. Nat'l Broad. Co.*,
  930 F.2d 662 (9th Cir. 1990) ...............................................19

*Nygard, Inc. v. Uusi-Kerttula*,
  72 Cal. Rptr. 3d 210 (Cal. App. 2008)..................................6

*Paterno v. Superior Court*,
  78 Cal. Rptr. 3d 244 (Cal. App. 2008)................................18

*Patio World v. BBB*,
  538 N.E.2d 1098 (Ohio App. 1989) .......................................5

*Philadelphia Newspapers v. Hepps*,
  475 U.S. 767 (1986)................................................... *passim*

*Reveley v. Berg Publ'ns, Inc.*,
  601 F. Supp. 44 (W.D. Tex. 1984) .......................................28

*Robertson v. Rodriguez*,
  42 Cal. Rptr. 2d 464 (Cal. App. 1995)................................19

*Rohde v. Wolf*,
  64 Cal. Rptr. 3d 348 (Cal. App. 2007)..................................7

*Rosenaur v. Scherer*,
  105 Cal. Rptr. 2d 674 (Cal. App. 2001)...............................17

*Steaks Unlimited v. Deaner*,
  623 F.2d 264 (3d Cir. 1980) ...............................................13

*Stewart v. Rolling Stone LLC*,
  105 Cal. Rptr. 3d 98 (Cal. App. 2010)................................18

*Sunshine Sportswear & Elecs. Inc. v. WSOC Television*,
  738 F. Supp. 1499 (D.S.C. 1989) .......................................13

- vi -

**Page**

*Tippett v. Maryland*,
    436 F.2d 1153 (4th Cir. 1971) ...........................................................19

*Trim-A-Way Figure Contouring, Ltd. v. BBB*,
    322 N.Y. Supp. 2d 154 (N.Y. App. Div. 1971).....................................5

*Trump v. O'Brien*,
    No. L545-06, __ A.3d __, 2011 WL 3903013
    (N.J. Super. App. Div. Sept. 7, 2011) ..................................................8

*Vegod Corp. v. Am. Broad. Cos.*,
    603 P.2d 14 (Cal. 1979).......................................................................14

*Weinberg v. Feisel*,
    2 Cal. Rptr. 3d 385 (Cal. App. 2003)....................................................6

*Wilbanks v. Wolk*,
    17 Cal. Rptr. 3d 497 (Cal. App. 2004)...................................................4

*Wilcox v. Superior Court*,
    33 Cal. Rptr. 2d 446 (Cal. App. 1994),
    *overruled in part on other grounds*,
    *Equilon Enters. v. Consumer Cause, Inc.*,
    52 P.3d 685 (2002)..............................................................................17

*Wilson v. Parker, Covert & Chidester*,
    50 P.3d 733 (Cal. 2002) ......................................................................17

## STATUTES, RULES AND REGULATIONS

United States Constitution
    First Amendment ...................................................................... *passim*

California Civil Code
    §47(b).............................................................................................3, 7, 30

653391_1

**Page**

California Code of Civil Procedure

    §425.16......................................................................................6, 7

    §425.16(e)(2) ..............................................................................7

    §425.16(e)(3) ..............................................................................7

    §425.16(e)(4) .....................................................................1, 3, 7

## SECONDARY AUTHORITIES

Steve Andrews & Charles Faulkner, *NLP: The New Technology of Achievement* (1994) ...............................................................23

Erin Arvelud, *Too Good to Be True: The Rise and Fall of Bernie Madoff* 1 (2009)......................................................................................21

Robert B. Cialdini, *Influence: The Psychology of Persuasion* 239 (rev. ed. 2007) ......................................................................................23

Stephen Licciardello, *MLM Success Secrets – NLP Techniquest for Multilevel Marketing Success* 7 (2011) ..........................................23

## I.   INTRODUCTION

Trump University says the district court erred in holding that Makaeff's communications related to "an issue of public interest" under the anti-SLAPP statute, California Code of Civil Procedure §425.16(e)(4), because Makaeff sought in private communications, only to obtain a refund for herself.   Yet her letters themselves demonstrate a desire to warn others, and to protect consumers beyond herself.   Press coverage of Trump University's troubles with regulators and its poor rating from the BBB, moreover, evidences strong public interest in the operation and character of Donald Trump's "University," which Makaeff's speech clearly addressed.   *Infra* at 3-8.

Though Trump University insists that as a small "39-employee company" it cannot independently command the influence that a prominent "public figure" such as Donald Trump does, the record shows that it thrust itself before the public eye not as an independent entity, but within the mantle of Donald Trump's larger organization. It thereby garnered coverage in leading news journals such as the *Los Angeles Times*, doing so long before Tarla Makaeff wrote her letters.   Trump University is a public figure required to demonstrate "actual malice" with "convincing clarity" under *New York Times Co. v. Sullivan*, 376 U.S. 254, 285-86 (1964), and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).   *Infra* at 8-17.

653391_1

Yet Trump University fails to demonstrate actual malice with "convincing clarity," *New York Times*, 376 U.S. at 285-86, and by "clear and convincing proof," *Gertz*, 418 U.S. at 342, as the Supreme Court holds it must. Trump University ***does not even mention*** the constitutionally mandated clear-and-convincing evidence standard, let alone begin to muster a showing that might satisfy it. The best Trump University can do is to argue that Makaeff praised it in course-evaluation forms and a "testimonial videotape" that it has never placed in evidence. That Makaeff at one time praised Trump University's program is hardly surprising – she was enthusiastic enough to commit tens of thousands of dollars. This hardly proves bad faith on her part. Neither does Trump University's contention that she suffered financial distress after parting with so much money, in return for a program of so little value. *Infra* at 17-24.

Trump University also fails to show that some warmly hyperbolic rhetoric in Makaeff's complaints to her bank and the BBB would be understood by the bank's dispute-resolution staff, or by the BBB mediator assigned to the matter, as statements of hard fact rather than as passionate expressions of opinion from a distressed consumer who felt she had been victimized. *Infra* at 25-26.

Trump University fails also to show that it suffered actual injury, as the Constitution requires when speech relates either to a public figure, or to a private figure in connection with a matter of public concern. Trump University offers nothing

653391_1

at all connecting Makaeff's letters, first publicly disclosed by Trump University itself in July 2010, to an asserted (but undocumented) September 2009 decline in its business. *Infra* at 26-29.

Though Trump University insists that Makaeff's communications cannot qualify as statements made in anticipation of imminent litigation, Makaeff's letter to her bank directly references her intention to seek legal redress, and her statements to the BBB were communicated to Trump University through a mediator seeking to resolve the dispute. Trump University's Counterclaim even charges that her legal counsel likely framed them both. They are privileged under California Civil Code §47(b). *Infra* at 29-31.

Finally, this Court may legitimately take notice of public facts, including continuing news reports showing that Trump University continues to be a matter of public concern. *Infra* at 31-34.

## II.   ARGUMENT

### A.   Makaeff's Communications Are Protected Speech and Advocacy

Judge Gonzalez soundly ruled that Makaeff's communications concerning Trump University come within the protection afforded by California's anti-SLAPP statute, as "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. P. §425.16(e)(4); *see* ER00007-09(CR24:4-6). As

- 3 -

Judge Gonzalez noted, Makaeff's communications clearly dealt with "an issue of public interest because the statements concern consumer protection information," ER00008(CR24:5), as did communications in both *Carver v. Bonds*, 37 Cal. Rptr. 3d 480, 491-93 (Cal. App. 2005), and *Wilbanks v. Wolk*, 17 Cal. Rptr. 3d 497, 505-08 (Cal. App. 2004).

Apparently abandoning its former contentions that Makaeff also defamed it in unspecified public Internet postings, Trump University now objects that Makaeff's communications were entirely private: "By making her statements to her bank and the BBB, not potential consumers of Trump University who she sought to warn, Makaeff's statements were not made for consumer protection purposes." Appellee's Brief at 20. Trump University's own Counterclaim, however, alleges as a fact that Makaeff's "intent and methods are best summarized in her own words: 'I am contacting the Better Business Bureau, the Federal Trade Commission, Bureau of Consumer Protection and the FDIC as well as posting the facts of my highly negative experience on a wide array of interest [sic] sites . . . I am contacting the media . . ***so that they can expose this scam*** and am willing to go to whatever lengths to obtain my money back . . . .'" ER0305(CR4:¶6) (Trump University's ellipses; emphasis added).

Even with significant text elided by Trump University's counsel and replaced with ellipses, the Counterclaim's incomplete quotation of Makaeff's letter to her bank indicates that she sought not only justice for herself, but also to help "expose this

- 4 -

scam." ER0305(CR4:¶6). Her broader aims become even clearer when elided text is restored, and we find Makaeff's letter explaining that

> I am contacting the Better Business Bureau (BBB), the Federal Trade Commission (FTC)[,] Bureau of Consumer Protection and the FDIC as well as posting the facts of my highly negative experience on a wide array of Internet sites *to ensure that this organization at some point is stopped from defrauding others with its predatory behavior*. I am also contacting the media to give them a statement of facts *so that they can expose this scam* and am willing to go to whatever lengths necessary to obtain my money back *including taking legal action at the state and federal levels for this crime that has been committed to thousands of students nationwide who have been preyed on and victimized as I know I am one of many*.

ER0223(CR15-1/Ex.A:11) (emphasis added).

Makaeff's goal of protecting the public from Trump University is readily apparent. Makaeff's letter to the BBB, moreover, was addressed to an organization that both seeks to mediate disputes, *and also to inform and protect the public* by issuing reports and ratings,[1] which generally are held to be privileged.[2]

The "D-minus" rating that the BBB awarded Trump University was itself reported by media outlets as news of interest to the public. Indeed, Makaeff's

---

[1]     *See* BBB, *Vision, Mission and Values*, http://www.bbb.org/us/BBB-Mission/ (accessed Sept. 27, 2011); *Overview of BBB Grade*, http://www.bbb.org/business-reviews/ratings/ (accessed Sept. 27, 2011).

[2]     *See, e.g.*, *Gugliotta v. Moreno*, 829 N.E.2d 757, 771 (Ohio App. 2005), *Patio World v. BBB*, 538 N.E.2d 1098, 1102 (Ohio App. 1989); *Trim-A-Way Figure Contouring, Ltd. v. BBB*, 322 N.Y. Supp. 2d 154, 156-57 (N.Y. App. Div. 1971).

- 5 -

Complaint specifically references media coverage given to investigations and orders by government regulators, and the publicity surrounding the BBB's "D-minus" rating – showing that consumer-protection concerns surrounding Trump University were an issue of public interest.[3]  Subsequent coverage shows that it continues to be.[4]

A matter of public interest under §425.16 encompasses "something of concern to a substantial number of people."  *Weinberg v. Feisel*, 2 Cal. Rptr. 3d 385, 392 (Cal. App. 2003).  This includes "***any issue in which the public is interested***," it being entirely "enough that it is one in which the public takes an interest."  *Nygard, Inc. v. Uusi-Kerttula*, 72 Cal. Rptr. 3d 210, 221 (Cal. App. 2008).  In *Nygard*, "'extensive interest'" in activities of "'a prominent business person and celebrity'" named Peter Nygard sufficed.  *Id.* at 220.  Here, interest in Donald Trump and his "University" must be deemed similarly sufficient.

Judge Gonzalez soundly concluded that Makaeff's efforts were indeed "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional

---

[3]  *See* ER0274(CR10:¶54 & n.9 (citing Douglas Feiden, *State Educrats Give Failing Grade to Donald Trump's 'Misleading' Trump University*, New York Daily News, April 16, 2010, and Lynn O'Shaughnessy, *Is Trump University Flunking Out?*, CBS MoneyWatch.com, April 19, 2010)).  *See* Request for Judicial Notice ("RJN"), Ex. C (Feiden article referenced in complaint), Ex. D (O'Shaughnessy article referenced in complaint), Exs. F-T (additional articles).

[4]  *See* Supplemental Request for Judicial Notice ("Supp. RJN") Exs. EE-GG (more articles).

right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. P. §425.16(e)(4); *see* ER00007-09(CR24:4-6).  The court had no need to consider whether Makaeff's communications also come within the scope of §425.16(e)(2)'s protection for "any written or oral statement made in connection with an issue under review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  But they clearly do, given Makaeff's references to her complaints to regulatory agencies and express intention of seeking legal redress. Statements made "in connection with anticipated litigation" are covered by §425.16(e)(2) even when made months before a complaint is filed.[5]  Had Trump University not abandoned claims based on Internet postings that it never identified, they too would be clearly covered by §425.16(e)(3)'s protection for "any written or

---

[5]     *Neville v. Chudacoff*, 73 Cal. Rptr. 3d 383, 388-89 (Cal. App. 2008); *see also Briggs v. Eden Council for Hope & Opportunity*, 969 P.2d 564, 569-70 (Cal. 1999) ("'[j]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subsection (b) . . . such statements are equally entitled to benefits of section 425.16'") (citation omitted); *Rohde v. Wolf*, 64 Cal. Rptr. 3d 348, 355-56 (Cal. App. 2007) (pre-litigation communications that defendant would take appropriate action if his demands were not met were subject to §425.16); *Blanchard v. DIRECTV, Inc*., 20 Cal. Rptr. 3d 385, 918 (Cal. App. 2004) (defendant's demand letter "sent in advance of, or to avoid, litigation" to vindicate its rights was subject to §425.16); *Dove Audio v. Rosenfeld, Meyer & Susman*, 54 Cal. Rptr. 2d 830, 834-35 (Cal. App. 1996) (defendant's communications to others related to anticipated action were subject to §425.16).

- 7 -

oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest."[6]

California's anti-SLAPP statute clearly applies.

### B. Donald Trump's "University" Either Shares His Status as a Public Figure, or Is At Least a Limited-Purpose Public Figure

Donald Trump, who oversees a veritable empire of business organizations bearing his name, is concededly an all-purpose "public figure" when it comes to the first-amendment interests protected by *New York Times* and *Gertz*. There can be "no doubt that Trump is a public figure," who must prove actual malice by clear-and-convincing evidence in order to prevail on a defamation claim.[7] That Donald Trump's "University" ostentatiously trades upon its identification with Trump's public persona is similarly beyond doubt. Its ads tell consumers they can "'Learn from the Master,'" with Donald Trump declaring in first-person singular: "I can turn anyone into a

---

[6]    *See Barrett v. Rosenthal*, 146 P.3d 510, 514 n.4 (Cal. 2006) ("Web sites . . . accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute.") (citation omitted).

[7]    *Trump v. O'Brien*, No. L545-06, __ A.3d __, 2011 WL 3903013, at *4 (N.J. Super. App. Div. Sept. 7, 2011) (applying *New York Times* to affirm dismissal of Trump's defamation claim against Timothy L. O'Brien, who had dared to question the extent of Trump's wealth).

successful real estate investor."[8]  Its scripted presentations portray Donald Trump's "University" as just one aspect of his business empire's story of success.[9]

Yet Trump University contends that Donald Trump's business empire, which citizens and news media alike understand to include his "University," is so distinct from his carefully cultivated public persona that each of its elements must be evaluated independently – purposefully ignoring any identification with Donald Trump himself – in order to determine whether *without him* it assumes a "role[ ] of special prominence in the affairs of society.'" Appellee's Brief at 21 (quoting *Gertz*, 418 U.S. at 345).

Only Donald Trump *as an individual* qualifies as a public figure his "University" says, so that citizens who dare speak about Donald Trump's "University" must forego the First Amendment a protections provided by *New York Times* and *Gertz*.  For more than a decade Trump has made a spectacle of himself, even ostentatiously flirted with the idea of running for political office – whether the White House, or the New York governor's mansion.[10]  Yet, if a citizen such as Makaeff

---

[8]     ER0266(CR10:¶30).

[9]     ER0267(CR10:¶32); reproduced in Opening Brief at 20.

[10]    *See, e.g.*, Greg Levine, *Trump's Next Building: NYS Governor's Mansion?*, Forbes, Dec. 30, 2005 (noting that Trump, who had considered running for president in 2000, was in 2005 eyeing the New York gubernatorial race) (available online at

- 9 -

declares "Trump and his University are a scam," the "University" insists that when it sues her, its well-cultivated identification with Trump's public persona is legally irrelevant. Her speech is protected by the First Amendment from suit by Donald Trump, on this view, but not from suit by his "University." What nonsense.

"'First Amendment freedoms need breathing space to survive.'" *Citizens United v. FEC*, __ U.S. __, 130 S. Ct. 876, 892 (2010) (citation omitted). "'Freedoms of expression require "breathing space,"'" in particular, breathing space that "is provided by a constitutional rule that allows public figures to recover for libel or defamation only when they can prove both that the statement was false and that the statement was made with the requisite level of culpability." *Hustler Magazine v. Falwell*, 485 U.S. 46, 52 (1988) (quoting *Philadelphia Newspapers v. Hepps*, 475 U.S. 767, 772 (1986)). To provide the needed breathing space for "speech on matters of public concern, the Court has been willing to insulate even ***demonstrably*** false speech from liability, and has imposed additional requirements of fault upon the plaintiff in a suit for defamation," including the requirement of *New York Times* and *Gertz* that actual malice be demonstrated with convincing clarity. *Philadelphia Newspapers*, 475 U.S. at 778 (Court's emphasis).

---

http://www.forbes.com/2005/12/30/trump-governor-nys-cx_gl_1230autofacescan06.html (accessed Sept. 27, 2011)); *see* Supp. RJN Ex. AA.

- 10 -

But the needed breathing space vanishes if citizens must distinguish among Donald Trump's various operations before speaking about any of them. Donald Trump is by design closely identified with his many namesakes – the Trump Organization, Trump Institute, Trump University, Trump Initiative, Trump Tower, Trump Resorts, and so on.[11] Fine distinctions among them all blur in the public eye. Trump University cannot show that the public, or even the news media, perceive it as an independent entity. And in this very appeal, Trump University is represented by the Trump Organization's assistant general counsel, Jill A. Martin, who is identified in media reports concerning Donald Trump's litigation as "his lawyer,"[12] and who

---

[11]    *See* http://www.trump.com/ (accessed Sept. 27, 2011).

[12]    Mike Jaccarino, *Judge Orders Trump to Repay Golfer's Club Fee,* New York Daily News, July 25, 2011 (reporting on litigation concerning Donald Trump's wrongful ouster of a man from one of his golf clubs: "Trump plans to appeal. 'The court misapplied the facts and misapplied the law,' his lawyer, Jill Martin, told the [Palm Beach] Post.") (available online at http://articles.nydailynews.com/2011-07-25/gossip/29831277_1_trump-plans-donald-trump-trump-international-golf-club (accessed Sept. 27, 2011)) (Supp. RJN Ex. BB); *Trump Ordered to Return Golfer's Membership Fee*, WENN.com, July 25, 2011 ("Trump plans to appeal the ruling. His lawyer, Jill Martin, tells the Palm Beach Post, 'We believe the club's actions were justified. The court misapplied the facts and misapplied the law.'") (available online at http://www.hollywood.com/news/Trump_ordered_to_return_golfers_membership_fee/7820454 (accessed Sept. 27, 2011)) (Supp. RJN Ex. CC); Jane Musgrave, *Trump Ordered to Repay Club Deposit to Ousted Member*, Palm Beach Post, July 22, 2011 ("Jill Martin, general counsel for the Trump organization, said an appeal is planned.") (available online at http://www.palmbeachpost.com/news/trump-ordered-to-repay-club-deposit-to-ousted-1637478.html (accessed Sept. 27, 2011) (Supp. RJN Ex. DD).

- 11 -

practices law "c/o Trump National Golf Club" in Rancho Palos Verdes.[13]  Yet the public is supposed to regard Trump University as something entirely separate and apart from Donald Trump's other activities and interests?  So Trump University says.

Its position is unreasonable.  This "39-employee company" not only holds itself out as Donald Trump's personal creation, through which he seeks to teach his business secrets.  *See* Opening Brief at 15-26, 47-54.  It even holds the copyrights to his books.  Donald Trump's book *Trump 101: The Way to Success*, for example, is "Copyright © 2007 by Trump University."[14]  His book *Trump – Never Give Up: How I Turned My Biggest Challenge Into Success*, moreover, is "Copyright © 2008 by Trump University."[15]  Nothing in the precedents suggests that one so notorious as "the Donald" may frustrate First Amendment interests by dividing his public image among countless subordinate partnerships and corporations – with each asserting that it exercises too little independent influence by itself to qualify as a "public figure."

---

[13]    *See* Trump University's Opening Brief, cover page; Notice of Appearance of Jill A. Martin, filed June 3, 2011 (9th Cir. Dkt. No. 21).

[14]    Donald J. Trump (with Meredith McIver), *Trump 101: The Way to Success*, front matter (New York: J. Wiley & Sons Inc. 2007); *see* RJN, Ex. U.

[15]    Donald J. Trump (with Meredith McIver), *Trump-Never Give Up*, front matter (New York: J. Wiley & Sons 2008); *see* RJN Ex. W.

653391_1

Federal precedent amply supports the conclusion that Trump University is a public figure. Supreme Court decisions indicate affiliation with the academy may make individuals public figures,[16] and Trump University held itself out as a public figure ***by calling itself*** a "University." That its self-promoting self-description turned out to be palpably false and misleading cannot change this. The public controversy surrounding Trump University's adoption of so misleading a name is one of its own making, not Makaeff's. And federal precedent, including the Third Circuit's opinion in *Steaks Unlimited v. Deaner*, 623 F.2d 264, 274 & n.45 (3d Cir. 1980), holds that misleading self-promotion and deceptive advertising – even of lowly consumer merchandise – may turn a business into a public figure.[17] Surely, misleading promotion of a bogus "University" and its worthless "educational" program may do so as well.

---

[16]     *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 155 (1967) (plurality of opinion of Justice Harla joined by Justices Clark, Stewart, and Fortas); *Masson v. New Yorker Magazine*, 501 U.S. 496, 499-500 (1991).

[17]     *Id*.; *see, e.g.*, *Izusu Motors Ltd. v. Consumers Union of the United States, Inc.*, 66 F. Supp. 2d 1117, 1124 (C.D. Cal. 1999); *Mattel, Inc. v. MCA Records, Inc*., 28 F. Supp. 2d 1120, 1162-63 (C.D. Cal. 1998), *aff'd*, 269 F.3d 894 (9th Cir. 2002); *Sunshine Sportswear & Elecs. Inc. v. WSOC Television*, 738 F. Supp. 1499, 1506-07 (D.S.C. 1989); *Brueggemeyer v. Am. Broad. Cos.*, 684 F. Supp. 452, 458 (N.D. Tex. 1988); *Am. Future Sys., Inc. v. BBB*, 923 A.2d 389, 390, 402-05 (Pa. 2007) (following *Steaks Unlimited* to hold that telemarketer publishing newsletters for "career-oriented individuals" is a limited-purpose public figure).

Trump University suggests that federal First Amendment precedents must be ignored because "[n]o California case law advocates application of public figure status" to a bogus "University," Appellee's Brief at 22, with holdings that misleading advertising produces limited-purpose public figures swept away by the California Supreme Court's ruling in *Vegod Corp. v. Am. Broad. Cos.*, 603 P.2d 14, 18 (Cal. 1979), that "[c]riticism of commercial conduct does not deserve the special protection of the actual malice test." Offering educational opportunities is something more than the merely "commercial conduct" addressed by *Vegod*, of course. Nonetheless, Trump University cites California precedent on retail merchandise as the ultimate "controlling authority" for when companies qualify as public figures, even faulting Makaeff for referencing "out-of-jurisdiction cases, which do not apply California law." Appellee's Brief at 39-40.

Trump University apparently forgets that who qualifies as a public figure clearly is a question of federal constitutional law, not state law. "The First Amendment limits California's libel law in various respects," so that when "the plaintiff is a public figure, he cannot recover unless he proves by clear and convincing evidence that the defendant published the defamatory statement with actual malice." *Masson*, 501 U.S. at 510. Though Trump University deems California state-court decisions as the only "controlling authority," state-court interpretations of federal law cannot bind this Court. At most they provide persuasive authority, that this Court may

- 14 -

choose to follow only if it independently determines that the state-court decision reached the correct result.[18]

Trump University hopes this Court will ignore both federal precedent, and the extensive media attention that its activities have generated.  It says "Makaeff's reliance on media attention given to Trump University is a red herring, as Makaeff admits the attention received by Trump University occurred **after** she made her defamatory statements at issue."  Appellee's Brief at 36 (Trump University's emphasis).  Yet Makaeff's Opening Brief highlights substantial press coverage predating her allegedly defamatory letters, "including David Lazarus's December 2007 columns for the *Los Angeles Times*, titled *Trump Spins in Foreclosure Game* and *Trump's a Grump About Column on His 'Priceless' Tips*."[19]  Makaeff's Opening Brief

---

[18]     *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984) ("Of course, the state court's interpretation of federal law does not bind our decision, though it may persuade us to reach a similar result."); *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1286 n.3 (9th Cir. 1977) (on points of federal constitutional law, "[w]e are not bound by state cases, although they may be considered persuasive authority"); *see also, e.g.*, *Moses v. County of Kenosha*, 826 F.2d 708, 712 (7th Cir. 1987) ("the decision of a state court on an issue of federal constitutional law is not authoritative in the federal courts").

[19]     Opening Brief at 4 (citing and providing url hyperlinks to David Lazarus, *Trump Spins in Foreclosure Game*, Los Angeles Times, Dec. 12, 2007 (online at http://www.latimes.com/business/la-fi-lazarus12dec12,0,7835610.column (accessed Sept. 27, 2011)), and to David Lazarus, *Trump's a Grump About Column on His "Priceless" Tips*, Los Angeles Times, Dec. 16, 2007 (online at http://www.latimes.com/business/la-fi-lazarus16dec16,0,1670633.column (accessed

quotes extensively from both of these articles, published in the *Los Angeles Times* nearly two years before Makaeff's allegedly defamatory letters concerning the "University." Opening Brief at 51-53.

Trump University says "it is well established that 'those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.'" Appellee's Brief at 36-37 (quoting *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979)). But David Lazarus' December 2007 articles, show Trump University had brought attention to itself long before Makaeff wrote to her bank and the BBB.

Any notion that Trump University's public notoriety ***is due to Makaeff***, rather than to its ostentatious self-promotion and deliberate self-identification with Donald Trump, is purest fantasy. Donald Trump and Trump University worked together to bring his University to prominent public attention – and succeeded. In his 2007 book *Trump 101: The Way To Success*, Donald Trump declared: "I created Trump University because I want to impart the business knowledge that I've accumulated over the years."[20]

---

Sept. 27, 2011))). The articles are cited in the complaint and are attached as Exhibits A and B to Makaeff's RJN. ER0267(CR10:¶30 & nn.3, 4).

[20] Donald J. Trump (with Meredith McIver), *Trump 101: The Way To Success*, 30 (2007); *see* RJN Ex. U.

653391_1

Donald Trump brought his "University" to public attention, inviting public attention, commentary, and criticism. Both Trump and his "University" are public figures.

## C. Trump University Provides No Clear-and-Convincing Proof of Actual Malice

To prevail against Makaeff's anti-SLAPP motion, California law required Trump University to demonstrate that its Counterclaim for defamation was "'"both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the **evidence** [it] submitted . . . is credited."'"[21] "The plaintiff's showing of facts must consist of evidence that would be admissible at trial."[22] This, of course, meant Trump University had to produce admissible evidence

---

[21]   *Navellier v. Sletten*, 52 P.3d 703, 708 (Cal. 2002) (quoting *Wilson v. Parker, Covert & Chidester*, 50 P.3d 733, 739 (Cal. 2002) (quoting *Matson v. Dvorak*, 46 Cal. Rptr. 880, 886 (Cal. App. 1995))) (emphasis added); *see Manufactured Home Cmtys., Inc. v. County of San Diego*, No. 09-55586, __ F.3d __, 2011 U.S. App. LEXIS 17839, at *11 (9th Cir. Aug. 26, 2011) (also quoting *Wilson*, 50 P.3d at 739); *Rosenaur v. Scherer*, 105 Cal. Rptr. 2d 674, 684 (Cal. App. 2001) (quoting *Matson*, 46 Cal. Rptr. at 886).

[22]   *Hall v. Time Warner, Inc.*, 63 Cal. Rptr. 3d 798, 804 (Cal. App. 2007); *accord, e.g.*, *Wilcox v. Superior Court*, 33 Cal. Rptr. 2d 446, 459 (Cal. App. 1994), *overruled in part on other grounds*, *Equilon Enters. v. Consumer Cause, Inc.*, 52 P.3d 685, 694 n.5 (2002); *Evans v. Unkow*, 45 Cal. Rptr. 2d 624, 628 (Cal. App. 1995) ("Such evidence must be **admissible**.") (emphasis in original); *Fashion 21 v. Coalition for Human Immigrant Rights of Los Angeles*, 12 Cal. Rptr. 3d 493, 499 (Cal. App. 2004).

sufficient to demonstrate "with 'convincing clarity,'" and "by 'clear and convincing proof,'"[23] the actual malice required by *New York Times* and *Gertz*.[24]

"When, as here, the plaintiff is a public figure, [it] cannot recover unless [it] ***proves by clear and convincing evidence*** that the defendant published the defamatory statement with actual malice, *i.e.*, with 'knowledge that it was false or with reckless disregard of whether it was false or not.'" *Masson*, 501 U.S. at 510 (quoting *New York Times*, 376 U.S. at 279-80 (emphasis added)). The critical question thus is

---

[23] *Philadelphia Newspapers*, 475 U.S. at 773 (quoting *New York Times*, 376 U.S. at 285-86, and *Gertz*, 418 U.S. at 342).

[24] *See Manufactured Home*, 2011 U.S. App. LEXIS 17839, at *12 (a public figure "would be required to prove by clear and convincing evidence that [the] statements were false and made with actual malice"); *Stewart v. Rolling Stone LLC*, 105 Cal. Rptr. 3d 98, 119 (Cal. App. 2010) (to prevail against an anti-SLAPP motion, public-figure "plaintiffs were required to provide clear and convincing evidence that defendants had acted with actual malice"); *Paterno v. Superior Court*, 78 Cal. Rptr. 3d 244, 250 (Cal. App. 2008) ("The constitutional malice standard under *New York Times* . . . protects freedom of expression by requiring public figure plaintiffs . . . to plead and prove falsehood, and to further establish actual malice by clear and convincing evidence."); *Christian Research Inst. v. Alnor*, 55 Cal. Rptr. 3d 600, 605 (Cal. App. 2007) (directing trial court to grant anti-SLAPP motion where defamation plaintiffs "have failed to demonstrate a probability of prevailing by clear and convincing evidence that Alnor made the challenged statement with 'actual malice'"); *McGarry v. Univ. of San Diego*, 64 Cal. Rptr. 3d 467, 480 (Cal. App. 2007) ("The requisite malice must be shown by clear and convincing evidence. This standard requires that the evidence of actual knowledge of the falsity or reckless disregard . . . must be of such character 'as to command the unhesitating assent of every reasonable mind.'") (citation omitted); *Conroy v. Spitzer*, 83 Cal. Rptr. 2d 443, 447 (Cal. App. 1999) (applying "clear and convincing standard of proof"); *Melaleuca, Inc. v. Clark*, 78 Cal. Rptr. 2d 627, 635-36 (Cal. App. 1998).

- 18 -

whether Trump University's record "evidence . . . is of the convincing clarity required to strip [Makaeff's] utterance[s] of First Amendment protection."[25]

Yet Trump University does not contend it has presented clear-and-convincing proof. It never even acknowledges the evidentiary burden it must carry. This is a serious omission, for the Supreme Court's attention to "adopting a 'standard of proof is more than an empty semantic exercise.'"[26] "In cases involving individual rights, whether criminal or civil, '[t]he standard of proof [at a minimum] reflects the value society places on individual liberty.'"[27] In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986), the Supreme Court explained that the First Amendment, as applied in *New York Times*, thus requires "actual malice must be shown with convincing clarity." Thus, "where the First Amendment mandates a 'clear and convincing' standard," a public-figure defamation plaintiff must demonstrate actual malice by

---

[25]  *Bose Corp. v. Consumers Union*, 466 U.S. 485, 511 (1984); *see Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 670 (9th Cir. 1990); *McKinley v. Baden*, 777 F.2d 1017, 1020-21 (5th Cir. 1985); *Bartimo v. Horsemen's Benevolent & Protective Ass'n*, 771 F.2d 894, 896-97 (5th Cir. 1985); *Mr. Chow of New York v. Ste. Jour Azul, S.A.*, 759 F.2d 219, 230 (2d Cir. 1985); *McCoy v. Hearst Corp.*, 727 P.2d 711, 715 (Cal. 1986); *Christian Research*, 55 Cal. Rptr. 3d at 613; *Robertson v. Rodriguez*, 42 Cal. Rptr. 2d 464, 471 (Cal. App. 1995).

[26]  *Addington v. Texas*, 441 U.S. 418, 425 (1979) (quoting *Tippett v. Maryland*, 436 F.2d 1153, 1166 (4th Cir. 1971)) (Supreme Court's brackets).

[27]  *Id*. (quoting *Tippett*, 436 F.2d at 1166).

substantially more than a preponderance of the evidence. *Id.* at 252. Even when ruling on pretrial summary-judgment motions, courts "must be guided by the *New York Times* 'clear and convincing' evidentiary standard." *Id.* at 257.

Perhaps Trump University overlooks the controlling standard for the simple reason that, on the record before this Court, "'the proof presented to show actual malice lacks the convincing clarity which the constitutional standard demands.'"[28] Trump University's showing is so deficient that it does not even meet the less demanding preponderance-of-the-evidence test.

Trump University says it has demonstrated that Makaeff acted with malice because in the past she occasionally praised its program on course-evaluation forms and in a "testimonial videotape," before allegedly finding herself in financial straits after parting with well over $35,000 to learn Donald Trump's secrets. Appellee's Brief at 42-43. Yet Trump University placed neither the course-evaluation forms nor the videotape in evidence, relying instead on Michael Sexton's unsubstantiated characterizations about what the evidentiary documents and videotape supposedly say. *See* ER0213-15(CR15-1:¶¶6, 8-11, 13). Sexton's unsubstantiated assertions about

---

[28] *Beckley Newspapers Corp. v. Hanks*, 389 U.S. 81, 82-83 (1967) (quoting *New York Times*, 376 U.S. at 285-86); *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1088 (3d Cir. 1985).

- 20 -

"glowing written reviews," and a supposedly upbeat testimonial videotape are no substitute for submitting this evidence – if it exists.

Neither would the existence of "glowing written reviews" and an upbeat videotape prove much, if anything. For a scam's victims typically sing its praises – while they are being taken. Even Bernie Madoff once "commanded the respect and admiration of Wall Street, of his wealthy friends and his charities, of his thousands of investors and believers."[29] Trump University's claimed "evidence" – if it exists – shows at most that Makaeff too was "a believer," in Donald Trump and his "University." That she was is hardly surprising – else she would not have made the extraordinary financial commitment that she did.

In addition to Sexton's declaration, Trump University cites an April 13, 2009, e-mail one of its staff received from Makaeff, in which she complained: "To be blunt, I did not receive the value that I thought I would for such a large expenditure." ER0210(CR17-3/Ex.1:1). Makaeff adds that "I'm in a very precarious financial position," noting that "I spent the money that . . . I shouldn't have," and that "I need to get what I paid for so that I can be the success story that Trump promotes."

_____

[29]     Erin Arvelud, *Too Good to Be True: The Rise and Fall of Bernie Madoff* 1 (2009).

- 21 -

ER0210(CR17-3/Ex.1:2). Even so, she emphasized that "a refund is not my goal." ER0211(CR17-3:Ex.1:2). She still hoped to obtain the education she was promised.

From this Trump University concludes: "Makaeff's defamatory allegations, directly related to her own financial woes, make it obvious that such allegations were not rooted in good faith belief in their veracity but rather on her own financial struggles." Appellee's Brief at 43. This, however, is quite a stretch, and surely does not amount to proof of actual malice by clear-and-convincing evidence.

That Makaeff suffered financial distress after losing so much money to Trump University for educational "secrets" of no real value hardly demonstrates with the "convincing clarity" required by *New York Times*, 376 U.S. at 285-86, that she spoke without genuine belief when she complained that she had been cheated. Neither does the fact that she was ***upset*** about what happened to her amount to clear-and-convincing proof of actual malice.

Makaeff's references to a "brainwashing scheme," ER0222(CR15-1:Ex.A:10), and to "neurolinguistic programming and high pressure sales tactics based on the psychology of scarcity," ER0227(CR15-1:Ex.A:15), are not clear-and-convincing evidence of knowing falsity or reckless disregard. Rather, given their context, they expressed her opinions concerning what she came to regard as manipulative sales pitches.

"Neurolinguistic programming, otherwise known as NLP, simply put is the art of studying human behavior and structuring human responses that can help turn every situation in your favor," according to NLP promoter Stephen Licciardello in his text on marketing.[30]  Makaeff's suggestion that Trump University employed the latest in marketing techniques hardly demonstrates actual malice on her part.

That Trump University employed "the psychology of scarcity" can be seen in promotional materials offering "Insider success secrets from Donald Trump" through "*a private, limited-time only invitation from Trump University*," ER0266(CR10:¶30), and by presenting program price-tags as "one-day-only" specials.   ER0269-70(CR10:¶39); *see* Opening Brief at 27-28.  The Arizona State University's Regents' Professor Emeritus of Psychology and Marketing, Robert B. Cialdini writes: "Probably the most straightforward use of the scarcity principle occurs in the 'limited number' tactic, when the consumer is informed that a certain product is in short supply that cannot be guaranteed to last long."[31]

Makaeff's letter to her bank opined that Trump University engaged in

---

[30]     Stephen Licciardello, *MLM Success Secrets – NLP Techniquest for Multilevel Marketing Success* 7 (2011); *see generally* Steve Andrews & Charles Faulkner, *NLP: The New Technology of Achievement* (1994).

[31]     Robert B. Cialdini, *Influence: The Psychology of Persuasion* 239 (rev. ed. 2007).

- 23 -

deceptive business practices, illegal predatory high pressure closing tactics, enrolling students for new credit cards they cannot afford for "real estate" transactions then coercing students to pay for the $34,995 Trump University mentorship and courses as well as the $4,995-$9,995 Profit Publishing Group entity creation package through debits or immediately with the cards as this is "good at this seminar only (with no) rainchecks" and other hard closing tactics.

ER0220-21(CR15-1/Ex.A:8-9).

Trump University says actual malice is apparent because Makaeff

***does not claim*** criminal conduct based on anything that happened to her. Noticeably absent from her letters are any allegations of actions by Trump University that it opened and charges ***her*** credit card without permission, that Trump University stole ***her*** identity, or that Trump University used brainwashing tactics on ***her***.

Appellee's Brief at 44 (emphasis in original). Yet her letter clearly ***does*** relate her own experience – with Trump University staff obtaining financial information from her on the false pretense of using it for real-estate transactions. ER0224-32(CR15-1/Ex.A:12-20).

"I can only liken it to a brainwashing scheme," she wrote,

that is so powerfully convincing initially that you do not realize you are being severely taken advantage of until you have completed the mentorships, attended all courses, and paid for the entity creation only to find that true answers that are promised to be revealed and services that are promised to be rendered at later courses and dates are never finally given, requiring more and more spending.

ER0222(CR15-1/Ex.A:10).

None of this amounts to clear-and-convincing proof of *New York Times* actual malice.

- 24 -

**D.    Trump University Fails to Show that Warmly Hyperbolic "Defamatory Rhetoric" Was Other than Impassioned Opinion**

That Makaeff believed she did not get what she bargained for, and felt she had been cheated is clear.   But what Trump University's Counterclaim itself calls "defamatory rhetoric," ER0311(CR4:¶22), was just that – hyperbolic ***rhetoric*** that when read in context, by a bank's dispute-resolution staff or a BBB mediator, would be understood as expressions of opinion.

Trump University cites this Court's opinion in *Manufactured Home Cmtys., Inc. v. County of San Diego*, 544 F.3d 959 (9th Cir. 2008), which recognizes that

> "where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by the use of epithets, fiery rhetoric, or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion."

*Id*. at 963 (quoting *Gregory v. McDonnell Douglas, Corp*., 552 P.2d 425, 428 (Cal. 1976)).   "***Ordinarily, this context-bound determination is a question of law for the court***, but if the challenged statement or statements are "'reasonably susceptible of an interpretation which implies a provably false assertion of fact,'" then they may be considered by the jury "'to determine whether such an interpretation was in fact conveyed.'"   *Id*. (quoting *Kahn v. Bower*, 284 Cal. Rptr. 244, 250 (Cal. App. 1991)) (emphasis added).

653391_1

In *Manufactured Home*, however, the statements were not qualified as expressions of opinion. *Id*. at 965. Makaeff's ***were*** so qualified, for she warned that "particulars on the law are for you to judge," emphasizing that "I'm not the expert." ER0233(CR15-1/Ex.A:21). She set out in great detail the underlying facts, that were in her opinion akin to "Fraud, Grand Larceny, and Identity Theft by Trump University/Profit Publishing Group." ER0222(CR15-1:Ex.A:10). But a reasonable reader in her bank's dispute-resolution department, and a reasonable BBB mediator, would understand that the ***underlying facts she stated*** were what mattered – not her colorful characterizations of them. Calling Trump University's conduct "Grand Larceny," for example, is equivalent to calling it "Highway Robbery" – clearly an expression of opinion.

This case thus falls within what *Manufactured Home* recognizes as the usual rule. Whether allegedly defamatory statements were of opinion in fact may be resolved as a matter of law – and in Makaeff's favor. *See, e.g.*, *Moyer v. Amador Valley J. Union High School Dist.*, 275 Cal. Rptr. 494, 497-98 (Cal. App. 1990).

### E. Trump University Has Not Demonstrated that It Suffered Actual Injury

Trump University contends that to the extent any of Makaeff's statements may be dubbed "libel per se," it need not demonstrate actual injury. But the Supreme Court explained in *Philadelphia Newspapers*, 475 U.S. at 774, that its decision in *Gertz* holds that "even when private figures are involved, the constitutional

- 26 -

requirement of fault supersedes the common law's presumptions as to fault ***and damages***."[32]  A plurality opinion in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985), suggests that with respect to "speech ***involving no matters of public concern***," a plaintiff who is neither a public official nor public figure still may recover "presumed and punitive damages – even absent a showing of 'actual malice.'"[33]  "When the speech is of public concern but the plaintiff is a private figure," however, "the Constitution still supplants the standards of the common law," which permit fault and damages to be presumed, even though "the constitutional requirements are, in at least some of their range, less forbidding than when the plaintiff is a public figure and the speech is of a public concern."  *Philadelphia Newspapers*, 475 U.S. at 775.

Thus, if Trump University is a public figure, it must demonstrate by clear-and-convincing evidence ***both*** that Makaeff acted with actual malice ***and*** that it suffered actual injury.  *Id.*  But if Trump University were merely a private figure, it still would

---

[32]     *Id.* (emphasis added); *see Brown v. Memphis Publ'g Co.*, 538 F.2d 699, 703 (5th Cir. 1976) (*Gertz* "requires a showing of actual, not presumed, damages").

[33]     *Id.* at 761 (Powell, J., concurring) (emphasis added).

have to show that Makaeff's speech involving "matters of public concern" ***caused actual injury***.[34]

This case demonstrates the importance of the constitutional requirement that ***actual injury*** must be proved whenever defamatory statements relate to a public figure, or that otherwise "involve matters of public concern." *Dun & Bradstreet*, 472 U.S. at 763. A decision that sustained Trump University's Counterclaim demanding to recover a million dollars from a former student – for complaining to her bank and to the BBB – could be expected to have chilling effects on consumer complaints, on public speech about purported educational institutions, and on public speech concerning public figures' business endeavors.

Persuasive evidence that Makaeff's letters caused actual injury is absent. Sexton's declaration rests on inadmissible hearsay concerning gossip about Internet chatter that he says caused revenues and earnings to decline: "In weekly conversations with members of the field team, the constant feedback has been that negative comments on the Internet by Ms. Makaeff ***and others*** have been the key driver of this decline. Attendees and prospective attendees have specifically cited those

_____

[34]    *See id*. at 774; *Reveley v. Berg Publ'ns, Inc.*, 601 F. Supp. 44, 45-46 (W.D. Tex. 1984); *Brown & Kelly Broad. Co.*, 771 P.2d 406, 428-29 (Cal. 1989); *cf. McNair v. Worldwide Church of God*, 242 Cal. Rptr. 823, 376 (Cal. App. 1987); *Melaleuca*, 78 Cal. Rptr. 2d at 636, 638.

statements." ER0217(CR15-1:¶21) (emphasis added). Yet Trump University does not explain why a court may rely on such vague hearsay. Neither does it explain why Makaeff is responsible for others' Internet chatter. And it appears to have abandoned its former contentions that her own unidentified Internet postings caused it actual injury, instead arguing that it need not prove actual malice because Makaeff's communications were not public. *See* Appellee's Brief at 17-20.

As neither Makaeff's September 2009 letter to her bank nor the November 2009 communication from the BBB was made public until Trump University filed them as exhibits to Michael Sexton's declaration in July of 2010, they could not have caused the injury asserted, that "[b]eginning in September 2009, Trump University's business began a sharp and sustained decline in both revenues and overall profitability." ER0217(CR15-1:¶21). The BBB did not award Trump University its "D-minus" rating until January 2010, again, after the claimed injury, and doubtless based on considerably more than Makaeff's communication.

Trump University failed to demonstrate that it suffered actual injury.

### F. Makaeff's Communications Are Protected Statements Made in Connection with Anticipated Litigation

Makaeff's letters clearly anticipated litigation. She wrote to her bank emphasizing that she sought to "expose this scam and am willing to go to whatever lengths necessary to obtain my money back including taking legal action" on behalf of "thousands of students nationwide who have been preyed on and victimized as I know

- 29 -

I am one of many." ER0223(CR15-1/Ex.A:11). From "discussions with counsel" she concluded she had "legal cause for action," and was with other students "discussing [a] class action." ER0227, ER0231(CR15-1/Ex.A:15, 19). She expressed hope that the bank would "see to it that my illegally obtained funds are returned immediately and perhaps you can help stop [and] put an end to this type of business," in return for which she said "I will not include Bank of America in this action." ER0223(CR15-1/Ex.A:11). Her complaint to the BBB was conveyed to Trump University by a mediator seeking to resolve the dispute. *See* ER0239(CR15-1/Ex.A:26).

Trump University nonetheless asserts that "Makaeff has no explanation of how her communications, made to non-parties to this litigation could possibly have a connection, or logical relation, to the litigation." Appellee's Brief at 58. Yet Trump University's Counterclaim itself suggests not only that the letters are connected to the litigation, but that Makaeff's legal counsel drafted them as part of their litigation strategy: "Plaintiff has brought her claims against Trump University in a purported 'nationwide class action' managed, controlled, and financed by class action lawyers who may have written some if not all of Plaintiff's defamatory letters themselves." ER305(CR4:¶7). The Counterclaim speculates that the letters were framed "quite possibly in her counsel's words ratified by her signature." ER312(CR4:¶24).

One need not credit such speculation to recognize that Makaeff's letters clearly anticipated imminent litigation, and that they are therefore privileged under California

- 30 -

Code of Civil Procedure §47(b).  *See Feldman v. 1100 Park Lane Assocs.*, 74 Cal.

Rptr. 3d 1, 23 (Cal. App. 2008).

### G. This Court May Judicially Notice Continuing Public Interest

News outlets have continued to report on Donald Trump and his "University"

confirming both that Makaeff's complaints concern a matter of public interest, and

also that Trump and his "University" are public figures.

The *International Business Times* reported on May 23, 2011, for example, that

"Trump University, which offers real estate and entrepreneur courses, now faces an

investigation by the New York Attorney General."[35]  "Trump University is one of

several for-profit schools in the state under investigation," the article observed,

"prompted by dozens of complaints from former students."[36]

The *Washington Post* reported on May 21, 2011, moreover, that New York's

Attorney General was investigating "Donald Trump's for-profit business school, the

Trump Entrepreneur Initiative (formerly known as Trump University)" for illegal

business practices, even after both New York and Maryland had "forced Trump to

---

[35]    *Trump University Faces More Scrutiny*, International Business Times, May 23, 2011 (available online at http://www.ibtimes.com/articles/150404/20110523/trump-university-new-york-attorney-general-real-estate-courses.htm (accessed Sept. 27, 2011)); *see* Supp. RJN Ex. EE.

[36]    *Id.*

- 31 -

drop the word 'university.'"[37]  "In 2010, the Better Business Bureau gave it a D-minus, its second lowest score, after getting 23 complaints," the *Washington Post* noted.[38]  It did not mention that Donald Trump's "University" had retaliated with a SLAPP suit demanding one million dollars from one of those complainants.

CNN's *Newsroom* covered Donald Trump and his "University" in its May 26, 2011, edition – complete with video of Donald Trump speaking on his University's behalf in first-person plural:  "At Trump University we teach success.  That's what it's all about, success.  It's going to happen to you."[39]  One need not presume the truth of the facts reported to see that the story itself demonstrates that consumer complaints – such as Makaeff's to the BBB – concerning Donald Trump's operation of his "University" relate to a matter of great public interest:

> [SUZANNE] MALVEAUX [CNN ANCHOR]:  So Donald Trump, he says that can he make you as rich as he is. All you need to do is sign up

---

[37]     Aaron Leitko, *Trump's School Faces Investigation; Clinton Supports Embassy Arts*, The Washington Post, May 20, 2011 (available online at http://www.washingtonpost.com/lifestyle/style/trumps-school-faces-investigation-clinton-supports-embassy-arts/2011/05/20/AFXE727G_story.html (accessed Sept. 27, 2011)); *see* Supp. RJN Ex. FF.

[38]     *Id.*

[39]     Transcript of CNN Newsroom:  *232 Unaccounted for in Joplin, Missouri; Trump School Under Scrutiny* . . . (May 26, 2011) (available on LEXIS/NEXIS); *see* Supp. RJN Ex. GG.

- 32 -

at his university. Right? But some students claim his school is anything but, and they want their money back.

Allan Chernoff reports New York's attorney general is now investigating.

(BEGIN VIDEOTAPE)

DONALD TRUMP, ENTREPRENEUR: At Trump University we teach success. That's what it's all about, success. It's going to happen to you.

CARMEN MENDEZ, FORMER TRUMP UNIVERSITY STUDENT: I didn't realize at that time –

ALLAN CHERNOFF, CNN SR. CORRESPONDENT (voice-over): It did not happen to Carmen Mendez, a former school teacher who sank $35,000 into the Trump Gold Elite Program at Trump University.

Mendez put the expense on three credit cards, expecting Trump's Profit From Real Estate Investing course would make her rich.

MENDEZ: I thought that I'm going to be a millionaire because Donald Trump is a millionaire. And they were offering the course for people to get rich.

CHERNOFF: This is the closest Mendez got to Trump during the course, a picture of her with a picture of Donald Trump. The three-day course she claims was worth little and her personal mentor, she says, never even met with her.

MENDEZ: Not only me. A lot of people were cheated from their money because you offer something and you don't deliver, so you are stealing. That's the word, you're stealing from people.

CHERNOFF: Mendez complained to the Better Business Bureau, which last year gave Trump University a grade of D-minus, one step above an F.

(on camera): Other students have also complained, which is why New York's attorney general is now investigating the Trump school for

- 33 -

possible consumer fraud and deceptive business practices according to a source with knowledge of the investigation.

(voice-over): Last year Donald Trump got into trouble with New York's Education Department, which wrote him, the use of the word "university" by your corporation is misleading and violates New York State education law.

Trump University is now Trump Entrepreneur Initiative. In a statement the Trump Initiative told CNN of the hundreds of students that took our classes in New York, 95 percent of them evaluated the course as excellent and our national average is even higher. We look forward to cooperating with the inquiry.[40]

Such coverage which is judicially noticeable, *see Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1152 n.3 (9th Cir. 1986), confirms that Trump University is a public figure that has deliberately thrust itself into the public spotlight, that Makaeff's letters related to a matter of public concern, and that neither Trump University's notoriety, nor the controversy itself, is of Makaeff's making.

## III. CONCLUSION

Makaeff's communications clearly related to "an issue of public interest," bringing them within the protective scope of California's Anti-SLAPP statute. Trump University shares its master's status as a public figure, but has failed to demonstrate by clear-and-convincing either that Makaeff acted with actual malice, or that it has

---

[40] *Id.*

- 34 -

suffered actual injury. The judgment below should be reversed, and the matter remanded with instructions to dismiss Trump University's Counterclaim.

DATED: September 27, 2011          Respectfully submitted,

                                   ROBBINS GELLER RUDMAN
                                     & DOWD LLP
                                   ERIC ALAN ISAACSON
                                   RACHEL L. JENSEN
                                   THOMAS R. MERRICK
                                   AMANDA M. FRAME


                                   _____
                                           s/ Eric Alan Isaacson
                                       ERIC ALAN ISAACSON

                                   655 West Broadway, Suite 1900
                                   San Diego, CA  92101
                                   Telephone:  619/231-1058
                                   619/231-7423 (fax)

                                   ZELDES & HAEGGQUIST, LLP
                                   AMBER L. ECK
                                   625 Broadway, Suite 906
                                   San Diego, CA  92101
                                   Telephone:  619/342-8000
                                   619/342-7878 (fax)

                                   Attorneys for Plaintiff-Counter-Defendant-
                                   Appellant

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that Plaintiff-Counter-Defendant-Appellant's Reply Brief uses a proportionally spaced Times New Roman typeface, 14-point, and that the text of the brief comprises 8,187 words according to the word count provided by Microsoft Word 2003 word processing software. This Reply Brief is accompanied by a Motion for Leave to Exceed the 7,000-Word Limit.

s/ Eric Alan Isaacson
ERIC ALAN ISAACSON

<u>DECLARATION OF SERVICE</u>

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.     I hereby certify that on September 27, 2011, I electronically filed the foregoing document:  **PLAINTIFF-COUNTER-DEFENDANT-APPELLANT'S REPLY BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

3.     I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 27, 2011, at San Diego, California.

s/ Eric Alan Isaacson
ERIC ALAN ISAACSON

653391_1

Service List
United States District Court for the Southern District of California, No. 10-cv-00940-IEG-WVG;
U.S. Court of Appeals for the Ninth Circuit, No. 11-55016

|  | **ECF Filing Status** |
|---|---|
| Amanda M. Frame<br>Robbins Geller Rudman & Dowd LLP<br>Suite 1900<br>655 West Broadway<br>San Diego, CA 92101-8498<br>aframe@rgrdlaw.com<br>Phone: 619/231/1058<br>619-231-7423 (fax) | Active |
| Amber Eck<br>Zeldes & Haeggquist, LLP<br>625 Broadway<br>Suite 906<br>San Diego, CA 92101<br>Ambere@zhlaw.com<br>Phone: 619/342-8000<br>619/342-7878 (fax) | Active |
| Christopher M. Burke<br>Scott & Scott LLP<br>Suite 1000<br>707 Broadway<br>San Diego, CA 92101<br>cburke@scott-scott.com<br>Phone: 619/233-4565<br>619/233-0508 (fax) | Active |
| David Keith Schneider<br>Yunker & Schneider<br>Suite 1400<br>655 W Broadway<br>San Diego, CA 92101<br>dks@yslaw.com<br>Phone: 619/233-5500<br>619/233-5535 (fax) | Active |
| Eric Alan Isaacson<br>Robbins Geller Rudman & Dowd LLP<br>Suite 1900<br>655 West Broadway<br>San Diego, CA 92101-8498<br>erici@rgrdlaw.com<br>Phone: 619/231/1058<br>619-231-7423 (fax) | Active |
| Jill Ann Martin<br>c/o Trump National Golf Club<br>One Ocean Trails Dr.<br>Rancho Palos Verdes, CA 90275<br>jmartin@trumpnational.com<br>Phone: 310/303-3225<br>310/265-5522 (fax) | Active |

| | |
|---|---|
| John David Blair-Loy<br>ACLU Foundation of San Diego and Imperial Counties<br>P.O. Box 87131<br>San Diego, CA 92138<br>dblairloy@aclusandiego.org<br>Phone: 619/232-2121 | Active |
| Rachel L. Jensen<br>Robbins Geller Rudman & Dowd LLP<br>Suite 1900<br>655 West Broadway<br>San Diego, CA 92101-8498<br>rachelj@rgrdlaw.com<br>Phone: 619/231/1058<br>619-231-7423 (fax) | Active |

- 2 -